[PHILADELPHIA, MARCH 29, 1833.]

The President, Directors and Company of the MERCHANT'S BANK of the City of New York *against* The President, Directors and Company of The BANK OF THE UNITED STATES.

IN ERROR.

Where a loss has been sustained by one of two or more innocent persons, it must be borne by him whose act was the cause of it.

Therefore, where the plaintiffs, a bank in *New York,* stood in the relation of creditor to the defendants, a bank in *Philadelphia,* and the former received in *Philadelphia,* from the latter, in payment of the debt, specie drawn from other banks, and not from the defendants' own vaults, contained in boxes taken at the tale of those banks by the defendants in the first instance, and afterwards by the plaintiffs' agent, who had an opportunity, and every necessary facility to tell the money for himself, but omitted to do so, and the specie was afterwards, under the direction of the plaintiffs' agent, transferred from the boxes to kegs, and sent to *New York,* where it was afterwards discovered that there was a deficiency in some of the kegs, but it was impossible for the defendants to ascertain in which of the banks from which they had drawn the specie, the errors had occurred, it was *held,* that the plaintiffs were not entitled to recover the amount of the alleged deficiency.

THIS was a writ of error to the *District* Court for the City and County of *Philadelphia,* in an action brought by the plaintiffs in error against the defendants in error, to recover the sum of one hundred and ninety-two dollars, with interest from the 3rd of *December,* 1825, for a deficiency of silver delivered by the latter to the former, in payment of certain drafts, amounting together to forty-two thousand, one hundred and thirty dollars. The amount received in payment turned out to be only forty-one thousand, nine hundred and thirty-eight dollars.

The deficiencies occurred in five kegs—

| | | | | | |
|---|---|---|---|---|---|
| 1. | Marked | $3000 | deficient | $75 | 00 |
| 2. | " | 2480 | " | 3 | 50 |
| 3. | " | 3000 | " | 58 | 50 |
| 4. | " | 3000 | " | 53 | 50 |
| 5. | " | 2650 | " | 1 | 50 |
| | | | | $192 | 00 |

It appeared in evidence on the trial in the District Court, that on the 3rd of *December*, 1825, the plaintiffs sent to *Philadelphia* an agent to present to the defendants certain negotiable paper amounting to forty-two thousand, one hundred and thirty dollars, for which he was instructed to demand specie. On presenting the drafts to the first teller of the United States Bank, he was told that they would draw for the amount on other banks in the city, and hand it over to him as soon as it was received; at the same time he was requested to call again at a certain hour named by the teller. The defendants accordingly drew out of three other banks, eighty-nine thousand dollars in specie, of which the first teller directed forty-two thousand dollars, to be handed over to the plaintiffs' agent. The latter returned to the bank at the time specified, which was about four or five hours after his first visit, when he received from the first teller certain boxes, said by him to contain specie to the amount of forty-two thousand, one hundred and thirty dollars. The boxes were brought from carts into the Bank of the United States, and not from the vaults of the bank. The agent of the plaintiffs, for the purpose of better securing the money, caused it to be taken out of the boxes, placed in kegs made purposely for specie, lined with hoops nailed on the inside of the chimes and the outside of the heads, and iron hooped or bound. This was done in the Bank of the United States by a cooper employed by the plaintiffs' agent, in his presence, and also in the presence of the porter and several other officers of the Bank of the United States, particularly of the first teller. The porter was present during the whole time they were repacking the specie. There were forty-two boxes, each said to contain one thousand dollars, and the balance, of one hundred and thirty dollars, was paid at the counter. The boxes were placed in the back room of the Bank of the United States, where there was ample room for counting it, and tables placed for that purpose, and it was proved to be the practice of the bank to allow time for counting there after banking hours. The kegs remained at the Bank of the United States until the plaintiffs' agent took them away for transportation. From the bank they were taken on board the steam-boat, where they remained under the charge of the agent of the transportation line, until the return of the plaintiffs' agent, who had gone to some other banks for specie which he had to receive. He took his passage on

(Merchant's Bank *v.* Bank of the United States.)

board the steam-boat in which the specie was placed, and accompanied it as far as *Trenton,* from which place it was transported to *Brunswick,* in wagons, accompanied by himself, and from *Brunswick* it was carried on board a steam-boat to *New York,* where it was delivered at the bank of the plaintiffs. From the time the steamboat left *Philadelphia* with the specie on board, until it was delivered at the Merchant's Bank in *New York,* by their agent, it was constantly under his eye. When it was delivered there, the kegs were in good condition, uninjured, and bore no marks of violence. When the specie was delivered to the plaintiffs' agent, he was not requested to count it, nor was any objection made to his doing so. On his examination as a witness in the cause, he stated, that he thought it would have taken him at least two days to count it. The first teller, who was also examined as a witness, swore that it would require about an hour to tell by weight forty thousand dollars, and that three persons might count that sum in three or four hours. He likewise swore, that it was always left to the person who received the money, to attend to repacking it. The kegs of specie were delivered by the agent to the first teller of the Merchant's Bank, in *New York,* on the 6th of *December,* 1825, and were opened a few days after, behind the counter in the banking room. From the time they were received, until they were opened, they were kept in the vaults of the bank. The specie was counted by the first teller, assisted by the porter, of the Merchant's Bank, when the deficiencies in the kegs above mentioned were discovered. The alleged deficiency was communicated on the 28th of *December,* 1825, by letter to the cashier of the *Philadelphia* Bank, who was requested to ask for payment of it from the Bank of the United States. A statement of the amounts deficient in the five kegs, was at the same time transmitted. Application for payment was accordingly made to the defendants, by whom it was refused. The depositions of the agent, first teller and porter, of the Merchant's Bank, were then sent on, and the application for payment renewed, which the Bank of the United States again refused.

The first teller of the Bank of the United States testified, that there was an understanding between the Bank of the United States and the other banks in this city, that where specie goes in the original boxes, mistakes shall be corrected, but that with foreign banks, the Bank of the United States had never, in any instance, corrected an alleged mistake. There had been some small errors with foreign banks, to the amount of ten or fifteen dollars, and one to the amount of fifty dollars, but in that instance the money had been counted and afterwards weighed. These errors seldom occurred, and had never been corrected. He also testified, that if an error had been discovered at the time the specie was repacked, the defendants could have ascertained in what bank it had occurred, but that after mixing it up, there were no means of knowing.

Judge Coxe, before whom the cause was tried, instructed the jury thus :—" That supposing the jury to be satisfied that the deficiency

(Merchant's Bank *v.* Bank of the United States.)

of one hundred and ninety-two dollars did exist at the time of the delivery of the boxes in payment of the draughts, then, if the jury be satisfied from the evidence, that *Catlin*, the agent of the plaintiffs, knew that the boxes of money were received from other banks, although he did not know the names of said banks, nor what banks, further than that they were banks of this city; that he knew the said boxes were marked so as to ascertain the bank from which each was received; that he knew that the error could be rectified so as to protect the defendants if a deficiency were ascertained in the original boxes—if he knew the defendants delivered the original boxes taken in payment, immediately on their receipt, to facilitate his departure without counting, and relying on his care, diligence, and integrity, as well as that of the officers of the banks from which they were received, and that the boxes were delivered to ascertain if correct, and were placed in a proper room, with counters and other conveniences for ascertaining the amount, and that *Catlin*, the plaintiffs' agent, knowing these facts, chose to have the original boxes broken open by a cooper, and boy, and the contents thrown into kegs, each containing three boxes, and mixed up the money received from different banks, so that it was impossible to identify them, and thus the said agent of the plaintiffs, knowingly prevented the defendants from protecting themselves from the loss which arose from the errors of the other banks, and not from their own, and the said agent then took on the said money to *New York*, on the 3rd or 4th of *December*, and delivered the same to the plaintiffs, who kept it until the 25th of *December*, before they counted it; if these facts be established from the evidence, in the opinion of the jury, together with the knowledge of them by *Catlin*, the plaintiffs' agent, I am of opinion it would be contrary to equity for the plaintiffs to recover in this action."

To this opinion the counsel of the plaintiffs excepted.

*J. M. Read*, for the plaintiffs in error, cited *Com. on Cont.* 326. *Lamine* v. *Dorrell*, 2 *Ld. Ray.* 1217. *Jones* v. *Ryde*, 5 *Taunt.* 488. *Bank of the United States* v. *Bank of Georgia*, 10. *Wheaton*, 342. *Curcier* v. *Pennock*,. 14 *Serg. & Rawle*, 51. *Raymond* v. *Baar*, 13 *Serg. & Rawle*, 318. *Gloucester Bank* v. *Salem Bank*, 17 *Mass. Rep.* 33. *Cox* v. *Prentice*, 3 *Maule & Selw.* 344. *Gallatin* v. *Bradford*, 1 *Bibb*, 209. 3 *Mason*, 1. 8 *Cowen*, 88. 97.

*Cadwalader*, for the defendants in error, cited, *Ellis* v. *Wild*, 6 *Mass. R.* 321. *Vernon* v. *Boverie*, 2 *Show.* 296. *Alexander* v. *Owen*, 1 *T. R.* 226. *Shep. Touch.* 142. *Wade's Case*, 5 *Rep.* 115. *Co. Lit.* 208, *a.* *Young* v. *Roth*, 4 *Bing.* 253. 6 *Taunt.* 76. 6 *Barn. & Cres.* 673. *Rep. in Ch.* 68. 15 *Ves.* 440. *Hart* v. *Ten Eyck*, 2 *John. Ch. R.* 108. ———— v. *Tegg*, 2 *Russell's Ch. R.* 385.

The opinion of the court was delivered by

GIBSON, C. J.—There is a rule which disposes with perfect and

(Merchant's Bank *v*. Bank of the United States.)

unquestionable justice of every loss, which must be borne by one of two or more innocent persons, by assigning it to him whose act was the cause of it. Both parties here are blameless; and the question is, whether the act of the one or the other contributed more to produce the state of things, which renders a loss by one of them inevitable. The facts are, that at the time of the transaction they stood in the relation of debtor and creditor; and that to answer the convenience of the former, the specie given in payment, was drawn from three other banks instead of its own vaults. It was contained in boxes taken at the tale of those banks, by the defendants in the first place, and afterwards by the plaintiffs, whose agent had an opportunity and every necessary facility to tell the money for himself, but omitted to do so; so that according to the custom in such cases, the boxes were delivered and received by common consent, without a particular examination of their contents: consequently, it is unnecessary to decide the vexed question, whether it be the business of the party paying, or the party receiving, to see that the money is right. There was a tacit agreement to deliver and receive the boxes, according to their nominal amount; and though an agreement founded in mutual mistake of a fact which was the inducement to it, be not usually conclusive, where it is not explicitly understood that the parties are respectively to take the risk of the fact as being in a particular way, it certainly is otherwise where the consequences of unravelling the transaction, would put the opposite party in a worse situation than if the agreement had not been made. The creditor requiring a review of the transaction, to ascertain the amount actually paid, must be able to show that the debtor cannot possibly be prejudiced in this respect. How he is to show it, is not the question here, where he has shown, on the contrary, that the defendant would suffer an irretrievable loss from the plaintiff's own act in confounding the contents of the boxes, and thereby rendering it impossible to fix the deficiency on any particular one of the banks from which the boxes were procured. By the plaintiffs' own showing, then, the act which rendered the loss inevitable, was done by its own agent. In putting the cause to the jury, the judge laid particular stress on the agent's supposed knowledge of the circumstances. That would undoubtedly strengthen the case, as it would be a species of bad faith, knowingly to deprive the defendant of the means of recourse to another for the deficiency, and at the same time to insist that the defendant should make the deficiency good; but it was not an essential ingredient. Between parties equally innocent, and consequently equally meritorious as to every thing else, the personal responsibility for the act which led to the loss, is sufficient to turn the scale, for the reason, that every man should bear the consequences of his own acts, just as he should bear his own misfortunes. The case then, as it appeared on the evidence, and clearly as it was put to the jury by the court, was one on which the plaintiffs could not recover.

Judgment affirmed.