# Jeffers and Wife *versus* Gill, for use of Lewis et al.

1. Where one of two innocent persons must suffer, he must bear the loss whose act or neglect has been the occasion of the suffering.

2. J. and his wife executed and delivered to G. a bond and mortgage, for $10,000, on the property of the wife, accompanied with a certificate of no defence, and G. assigned them to M.   J. and his wife then conveyed a part of the mortgaged premises to Mc., and the remainder to the wife of Mc., both of whom had knowledge of the assignment to M.   Mc. and wife reduced the mortgage debt to $3000, which was noted on the mortgage, and Mc., at the suggestion of G., gave the latter a negotiable note for that amount, with the agreement that G. should hold the mortgage of J. and wife to secure the payment of the note or its renewal.   M. re-assigned the mortgage to G., who, without the knowledge of Mc., assigned it to L.   The note of Mc. was several times renewed, and upon the last renewal G. transferred it to a bank for value, before maturity, which obtained judgment and recovered the amount from Mc.   L. brought suit on the mortgage and showed that she had paid full value for it, and that she purchased said mortgage without actual notice or knowledge of any agreement between G. and Mc., or that the latter had given a note for the same debt.   *Held* (affirming the court below), that Mc. having put it in G.'s power to commit the fraud, and having exercised that power by the assignment of the mortgage to L., and at the same time keeping secret the collateral arrangement involving the note, Mc. must suffer the loss.  *Held, further,* that no duty of inquiry rested

[Jeffers *v.* Gill.]

on L. to ascertain if Mc. had a defence to the mortgage, the want of reasonable prudence on the part of the latter having been the cause of the imposition upon her.

October 13th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1879, No. 327.

Scire facias sur mortgage by S. B. W. Gill, for the use of Mrs. Eliza Lewis and Miss Rachel Walker, against C. B. Jeffers and Margaret J., his wife, with notice to Robert McCain terre-tenant.

On the 6th of April 1874, C. B. Jeffers and Margaret, his wife, executed and delivered to S. B. W. Gill, then a lawyer in large practice, a bond and mortgage on property situated in the city of Allegheny, and belonging to Mrs. Jeffers, which bond and mortgage recited an indebtedness of $10,000.

By deeds dated the 10th of April 1874, Jeffers and wife conveyed a part of the mortgaged premises to Robert McCain, and the remaining part to Eliza Jane McCain, wife of Robert, by two several deeds of conveyance of that date, and which were recorded on the 25th of September 1874.   McCain testified that at the time of the delivery of the Jeffers deeds he knew that the Gill mortgage had been assigned to one McCullough.

On the 1st of May 1874, Gill, having by an endorsement on the bond and an entry on the margin of the record of the mortgage acknowledged the payment of $4400, assigned and transferred the securities and the remaining $5600 to McCullough.

The purchase was made by McCain and wife, subject to the said Gill mortgage and certain other liens, the payment whereof was assumed by the McCains as part of their purchase-money.

In each of said deeds was contained the following provision : " This conveyance being made subject to the payment by the party of the second part of all mortgages and record incumbrances at present a charge and lien upon hereinbefore described lot of ground."

On the 6th of April 1876, the mortgage to Gill matured, and on that day McCain and wife paid to Gill the sum of $2600, thus reducing the mortgage debt to the sum of $3000, which payment was acknowledged on the mortgage.

At the suggestion of Gill, McCain then gave him a negotiable note for said $3000, at four months, to his, Gill's order, and it was agreed between them that the bond and mortgage of Jeffers and wife to Gill should remain in the hands of the latter to secure the payment of said note, or any renewals thereof.

On the 8th of April 1876, the bond and mortgage were re-assigned by McCullough to Gill, who, on the 10th of April 1876, assigned and transferred the said bond and mortgage to Mrs. Eliza Lewis,

who, in her turn assigned and transferred an interest in said bond to Rachel Walker.

On the 4th of August 1876, the note for $3000 given to Gill, matured, and was renewed by another note of like form and amount, and an agreement in writing in the following words and figures was entered into between Gill and McCain.

"Received August 4th 1876, of Mr. Robert McCain his promissory note for $3000, payable four months after date, being a renewal of another note for same amount, dated April 1st 1876, for four months ; said first note and this renewal being given in payment and satisfaction of the balance due upon the mortgage of C. B. Jeffers and wife, dated April 1st 1874, and recorded, it being the contract and bargain that said four months' note is to be renewed from time to time for two years, from April 1st 1876, he, said McCain, to pay the interest and discount on each renewal every four months, and said Gill is to hold said mortgage and bond as a security for the payment of said note and each and every renewal thereof; and when the said debt of $3000 is paid, he is to fully satisfy and discharge said mortgage in due form of law.

S. B. W. GILL."

Under this agreement McCain continued to renew said notes and pay the discount to Gill until August 1877, when he signed the last renewal note at four months.

In the fall of that year, Gill secretly left the community, and was not heard of thereafter.

Some time after Gill's disappearance, the son of Mrs. Lewis called on McCain and demanded the payment of interest on the bond and mortgage. This was the first intimation, so McCain testified, that he had of the transfer of the bond and mortgage to Mrs. Lewis. Suspecting nothing wrong, McCain paid the interest demanded.

Shortly afterwards he received notice from the National Bank of Commerce of Pittsburgh, that said bank claimed to hold the final renewal note for $3000, given to Gill. McCain then, though willing to pay the debt of $3000, declined to recognise the title of one to the exclusion of the other. Accordingly suits were brought, one by the bank as the holder of the note, and one by Mrs. Lewis, on the mortgage. The suit by the bank in the Circuit Court of the United States, resulted in a judgment in favor of the bank as a bona fide holder before maturity of a negotiable note; and this judgment McCain had since partly paid and secured the payment of the balance.

On the trial of the present action the foregoing facts were made to appear. It was shown that the bank had, from time to time, as they were given, discounted the entire series of these notes for Gill. It was also shown, on behalf of Mrs. Lewis, that she had paid full

[Jeffers *v.* Gill.]

value for the bond and mortgage, and that she purchased it without knowledge or actual notice of the agreement between Gill and McCain, or that the latter had given a note for the same debt.   At the time of her purchase of the securities, a certificate of no defence by Jeffers and wife, of the date of April 10th 1874, was turned over by Gill to Mrs. Lewis, together with the bond and mortgage.

The second point submitted by plaintiffs, which the court, White, J., affirmed, was as follows: "That under all the evidence in the case, if the same is believed by the jury, the plaintiffs, Mrs. Eliza Lewis and her assignee Rachel Walker, are entitled to a verdict."

This instruction, inter alia, was assigned for error by defendants who took this writ.

*J. C. McCombs* and *George Shiras, Jr.,* for plaintiffs in error.— Gill, as mortgagee, could not maintain this action.   Having negotiated McCain's note he could not bring the action on the mortgage until he had taken up the note: Small *v.* Jones, 8 Watts 265. As the note was paid by McCain to the Bank of Commerce, the mortgage, so far as Gill was concerned, was paid, and McCain was entitled to demand its satisfaction.   Did payment to Gill, prior to the assignment to Mrs. Lewis, avail as a payment as against her? Could Gill confer upon his assignee a better title than he had himself?   It is settled law that the assignee of a mortgage takes it subject to the equities against his assignor: Hodgdon *v.* Naglee, 5 W. & S. 217; Davies *v.* Austen, 1 Vesey 247; Kamena *v.* Haildig, 8 Green (N. J.) 78.

It is contended, on behalf of the defendants in error, that the equities to which the assignee of a mortgage is subject are the equities between the mortgagor and the mortgagee, and not those existing between the mortgagor and third persons.   This, as a proposition of law, must be regarded as extremely doubtful. While there are some Pennsylvania cases that assert such a rule, it will be found, on examination, that those cases proceeded upon a decision to that effect made by Chancellor Kent, in Clute *v.* Robinson, 2 Johns. Rep. 612.   But this decision, having been carefully reviewed in several subsequent cases, was finally deliberately overruled by the Court of Appeals of the state of New York—see Trustees of Union College *v.* Wheeler, 61 N. Y. 88, and Greene *v.* Warnick, 64 Id. 220, and the reasoning of the latter cases seems satisfactory.

But, however the law may be in that regard, the proposition invoked does not apply to the facts of the present case.   This is a case in which the equities exist between Jeffers and wife, as the original obligors of the mortgage and bond, and Gill, as the mortgagee, as well as between the latter and McCain.   The bond of Jeffers was and still is outstanding.   McCain and wife had covenanted, by purchasing subject expressly to the payment of this

[Jeffers *v.* Gill.]

bond and mortgage, to pay and extinguish them. Hence, if Mrs. Lewis, when she undertook to invest in the bond and mortgage of Jeffers and wife, had gone to them, she would have learned the truth: that the land had been sold; that new parties had stipulated to pay and exonerate them, and that, in point of fact, the debt had already been paid by the delivery of McCain's negotiable note.

The effect, as notice, of the possession of the mortgaged premises, is also to be considered.

*M. W. Acheson,* for defendants in error.—The mortgagors make no defence. The defence is made by the terre-tenants, Robert McCain and wife. Mrs. Lewis was a bona fide purchaser for value of the mortgage in question and accompanying bond. She found the mortgage and bond, with the certificate of no defence, in Gill's hands, with nothing appearing thereon to show the alleged agreement between Gill and McCain; and, in fact, she was wholly ignorant thereof.

At the time of her purchase of the mortgage and the assignment thereof to her, she had not actual knowledge of the conveyance by Jeffers and wife to the McCains. In examining the mortgage title she was not bound to search for conveyances from the mortgagors subsequent to the date of the mortgage. The Jeffers deeds did not lie in the pathway of her search, and therefore she was not visited with constructive notice: Keller *v.* Nutz, 5 S. & R. 246; Woods *v.* Farmere, 7 Watts 382; Lightner *v.* Mooney, 10 Id. 407; Taylor *v.* Maris, 5 Rawle 51; Hetherington *v.* Clark, 6 Casey 393.

The assignment by Gill to Mrs. Lewis was promptly entered of record. She was guilty of no laches. Throughout the whole transaction she acted with commendable prudence. But McCain was guilty of gross laches. His alleged agreement with Gill was made, and the original $3000 note given on April 1st 1876, when McCullough was still the owner of the mortgage and bond. He did not place his agreement of record; nor did he have it noted upon the securities. He renewed his note four times without examination of the record to see whether the mortgage had been assigned, and without inquiry as to whether Gill still held the securities. He permitted the mortgage and bond and certificate of no defence to remain in Gill's hands, in a condition which enabled Gill to obtain the money of an innocent purchaser, and should suffer for his wrongful act. Where one of two innocent persons is to suffer for the tortious acts of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act: Pennsylvania Railroad Co.'s Appeal, 5 Norris 80; Wethrill's Appeal, 3 Grant 288; Fisher *v.* Knox, 1 Harris 626.

The assignee of a mortgage takes it subject to the equities of the

[Jeffers v. Gill.]

mortgagor, but not to the latent equities of third parties; Mott v. Clark, 9 Barr 399; Pryor v. Wood, 7 Casey 142; Wetherill's Appeal, *supra;* McMasters v. Wilhelm, 4 Norris 218; Davis v. Barr, 9 S. & R. 137; Commonwealth v. Councils of Pittsburgh, 10 Casey 496; Taylor v. Gitt, 10 Barr 428; Fisher v. Knox, *supra;* Hendrickson's Appeal, 12 Harris 363.

Mr. Justice GORDON delivered the opinion of the court, October 27th 1879.

" Where one of two innocent persons must suffer, he must bear the loss whose act or neglect has been the occasion of the suffering:" Wethrill's Appeal, 3 Grant 281. Judged by this rule, McCain's defence fails. He it was who put it into Gill's power to commit the fraud which has produced the result complained of; from first to last he has been grossly negligent. He gave his note for the balance due ùpon the mortgage, when it was yet in the hands of McCullough, and when it did come into Gill's possession he took no steps to have the arrangement endorsed either upon the papers or upon the record. The mortgage, bond and certificate of no defence were left in Gill's possession as security for the note; in other words, they were to be of full force until the note was paid. Thus was Gill left with power to dispose of the mortgage as he might see proper, and he, having exercised this power, by assigning to Mrs. Lewis, at the same time keeping secret the collateral arrangement involving the note, I cannot see how, in justice, she is to be made to suffer. But the carelessness of McCain is further manifested in this: when the note was renewed, in August 1876, he neglected to examine the record, or to demand sight of the papers, by either of which he might have informed himself of the assignment, and in this manner he let slip the opportunity to secure himself Furthermore, he renewed this paper from time to time until Gill ran off and left him to pay it to his endorsee. McCain having thus neglected to exercise the most ordinary prudence, having, though it may be, inadvertently, helped a rogue' to set a trap for the unwary and innocent, he cannot be heard to complain if he himself has experienced the misfortune to be caught in it.

It has been urged that the duty of inquiry rested upon Mrs. Lewis; that she ought to have gone to McCain, the vendee of Jeffers, and ascertained if he had any defence. Saying nothing about her want of knowledge of the transfer of the mortgaged premises to McCain, or of the effect of the certificate of no defence executed by Jeffers, this might be true had McCain exercised a reasonable degree of prudence, but as the want of such prudence was the cause of the imposition upon Mrs. Lewis, she owed him no duty of any kind. Had he not been negligent, she would not have paid her money, and he cannot now impose the fruits of that neg-

[Jeffers *v.* Gill.]

ligence upon her, by insisting upon a duty which was due him only when acting in an ordinarily prudent and careful manner.

Judgment affirmed.