SIGMUND GUTFREUND et al., Copartners under the Firm Name of GUTFREUND'S OLYMPIA MARKET, Respondents, v. THE EAST RIVER NATIONAL BANK, Appellant, Impleaded with Others.

(Argued April 22, 1929; decided May 28, 1929.)

*John J. Curtin* and *Wesley S. Sawyer* for appellant. Plaintiffs signed and delivered to an employee to be issued by him the checks with blank spaces thereon for the payee's name, and left to him, and tacitly authorized him, to fill in the blank spaces and issue the checks in course of business; and plaintiffs are bound by the acts of its employee in filling in the blank spaces. (*Trust Co. of America* v. *Conklin,* 65 Misc. Rep. 1; *Linick* v. *Nutting & Co.,* 140 App. Div. 265; *Timbel* v. *Garfield Bank,* 121 App. Div. 870; *Macmillan* v. *London Bank,* L. R. [A. C. 1918] 777; *Young* v. *Grote,* 4 Bing. 253; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Gallo* v. *Brooklyn Bank,* 199 N. Y. 222; *Nat. Surety Co.* v. *Bank of Manhattan Co.,* 133 Misc. Rep. 48; *Nat. Exchange Bank* v. *Lester,* 194

N. Y. 461; *Ehrich* v. *Guaranty Trust Co.*, 194 App. Div. 658; *Tri-Bullion Co.* v. *Corliss*, 186 App. Div. 613.) Plaintiffs were charged each month with notice that their checks were being filled in with a fictitious name as payee. (*Critten* v. *Bank*, 171 N. Y. 219; *Myers* v. *Bank*, 193 Penn. St. 1; *Stumpp* v. *Bank*, 212 App. Div. 608; *Morgan* v. *U. S. Mortgage Co.*, 125 App. Div. 22; *North British Ins. Co.* v. *Bank*, 161 App. Div. 341.)

*William F. Unger* and *David J. Colton* for respondents. The plaintiffs were not negligent in signing the checks. (*Shepard & Morse Lumber Co.* v. *Eldridge*, 171 Mass. 516; *People's Trust Co.* v. *Smith*, 215 N. Y. 488; *Nat. Exchange Bank* v. *Lester*, 194 N. Y. 461.) The plaintiffs were not negligent in failing to discover the forgeries from an inspection of the other returned canceled checks. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Am. Ex. Nat. Bank* v. *Yorkville Bank*, 122 Misc. Rep. 616; 210 App. Div. 885; *Spiegel Realty Corp.* v. *Gotham Nat. Bank*, 121 Misc. Rep. 547; *Welsh* v. *German-American Bank*, 73 N. Y. 424; *Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *Leff* v. *Security Bank*, 93 Misc. Rep. 139; *Kleinman* v. *Chase Nat. Bank*, 124 Misc. Rep. 173; *People's Trust Co.* v. *Smith*, 215 N. Y. 488.) Even if we were to assume that the plaintiffs were negligent, they are, nevertheless, entitled to recover because the appellant itself was negligent in cashing the checks. (*Critten* v. *Chemical National Bank*, 171 N. Y. 221; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Hanover Bank* v. *American Dock & T. Co.*, 148 N. Y. 612; *Park Hotel Co.* v. *St. Louis Fourth National Bank*, 86 Fed. Rep. 742; *Farmers' Bank* v. *Germania Life Ins. Co.*, 150 N. C. 770; *Claflin* v. *Farmers' & Citizens' Bank*, 25 N. Y. 293; *Interboro Brewing Co.* v. *Doyle*, 165 App. Div. 646.)

POUND, J. The case comes before us on an action to recover damages for the payment of nine forged and altered checks, out of thirty-nine of like purport originally

sued on. These nine are the later checks of a series covering a period of about one year and three months. The earliest is dated September 11, 1923; the latest January 22, 1924. Plaintiffs have had judgment thereon with interest for $2,183.48.

The facts out of which the litigation arises are as follows: Plaintiffs conducted a wholesale and retail meat market as partners under the firm name and style of Gutfreund's Olympia Market. They bought provisions from various well-known wholesale dealers, including Swift & Co., E. C. Swift & Co., Cudahy Packing Co., and Morris & Co. They had a business checking account with the Commercial Trust Co., now merged with the defendant East River National Bank. They had a bookkeeper, John Hunold, whose duty it was to receive the bills for meat from the dealers, make out checks for their payment drawn on the Commercial Trust Co., enter the names of the dealers and the amounts of the checks on the check stubs, attach each bill to the check in payment therefor and present them to Sigmund Gutfreund, one of the members of the firm, for signature. Hunold would present from eight to twelve checks with the accompanying bills for signature at one time. Gutfreund would sign the checks and Hunold would mail them to the proper parties. Hunold was dishonest. In a bunch of checks payable to dealers he would present one check drawn to the order of " Swift " instead of " Swift & Co." or " Cudahy " instead of " Cudahy Packing Co." attached to a regular bill which had been paid, the amount of which was the same as that of the fraudulent check. The check stub would bear the name of the firm in the proper form. Gutfreund would sign these checks in the belief that they were intended for the dealer whose name they bore. He did not intend them as checks payable to a fictitious person and thus to bearer. (Negotiable Instruments Law [Cons. Laws, ch. 38], § 28, ¶ 3.) A sufficient space was left on the check before the name

" Swift " or " Cudahy " to enable Hunold to insert an
initial. Hunold then wrote an initial before the name, so
it would appear as " C. Swift " or " C. Cudahy " or the
like, indorsed the fictitious name and his own name on
the back of the checks and presented them to the paying
teller of the bank who cashed the checks for him. He
converted the money to his own use. Hunold kept the
firm's books and looked after the returned vouchers and
thus concealed his criminal acts from his employers.

No claim is made that the bank is not liable under sec-
tion 326 of the Negotiable Instruments Law, for the bank
was notified of the forgery of the checks in suit within one
year after the return of the vouchers of such payments.

The first question is whether plaintiffs were at fault
in signing the checks. As the bank and the depositor
are under a contractual relation in this matter (*Gallo* v.
*Brooklyn Savings Bank*, 199 N. Y. 222) the depositor in
drawing checks is bound to take usual and reasonable
precautions to prevent forgery, although he is not required
so to prepare the check that no one can successfully
tamper with it. " The drawer of a check may be liable
where he draws the instrument in such an incomplete
state as to facilitate or invite fraudulent alterations."
(*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219, 224.)

The question as to what is negligence facilitating
alterations has given rise to much discussion. In the
leading case of *Young* v. *Grote* ([1827] 4 Bing. 253) a
depositor in a bank signed a blank check and left it with
his wife to be filled up as required. The wife directed a
clerk to fill it up for £52 2s. He did so and showed it
to her. She then instructed him to get it cashed. He
increased the amount of the check by £400, inserting the
necessary figure and words in spaces which he had left
for that purpose and drew the larger sum from the bank.
It was held that the customer and not the bank should
suffer the loss. Reasonable care must be used to prevent
forgery and lack of reasonable care was shown. Although

the application of the rule of care to the facts in *Young*
v. *Grote* has been limited as casting too great a burden on
the depositor by requiring him to close up all spaces
which might be utilized by a forger for the purpose of
alterations (*Colonial Bank* v. *Marshall*, [1906] A. C. 559,
568), and the case has been characterized by ESHER,
M. R., in *Scholfield* v. *Londesborough* ([1895] 1 Q. B. 536,
543) as "the fount of bad argument," it still states
the principle to be applied to blanks left unfilled in
checks either as to names, figures or words. (*London
Joint Stock Bank* v. *MacMillan*, [1918] A. C. 777, 821.)
The rule as to other negotiable paper and other relations
may be less strict. (*National Exchange Bank* v. *Lester*,
194 N. Y. 461, 473; *Scholfield* v. *Londesborough, supra*.)

The grounds for the decision in *Young* v. *Grote* have
been variously stated but they resolve themselves into
the principle that if the negligence of the depositor is
the cause of the payment by the bank of a forged check
he may not set up the invalidity of the paper which he
has induced the bank to act on as genuine. This principle
rests primarily on the doctrine of estoppel. If the negli-
gence of the depositor enables the clerk to alter the check
and so causes the bank to make payment on a forged
order, the depositor is estopped from disputing the author-
ity of the banker to pay. "Preclusion from assertion of
rights is estoppel." (Ewart on Estoppel, 45.)

The checks have been produced before us. They
were, when signed, complete in form except for the use
of the single name of the payee and the blank preceding
such name. The spaces left in the check facilitated the
forgery by Hunold. They were left by him for the pur-
pose of enabling him to accomplish the fraud. "The
mere fact that the cheque is drawn with spaces such that
a forger can utilize them for the purpose of forgery is
not by itself any violation of [the depositor's] obligation."
(*Colonial Bank* v. *Marshall, supra*.) But when the name
of the payee is left blank, or partly blank, forgery is not

a remote but a natural consequence. (*London Joint Stock Bank* v. *Macmillan, supra.*) The checks were drawn in a negligent and unbusinesslike manner. At least it might have been so found as a question of fact.

But more must be shown to defeat recovery in this case. Mere negligence on the part of the depositor ought not to relieve the bank unless the bank has been misled by the negligent act.

It follows that the ultimate question is: Did the bank rely on the form of the checks and was it misled by the fact that they were altered through plaintiffs' negligence? If it did not rely on the form of the checks and was not misled by plaintiffs into the belief that the payees were genuine persons who had genuinely indorsed the checks, no estoppel arising out of the negligence of the plaintiffs can be asserted by the bank. It was not the negligence of the plaintiffs but the negligence of defendant which was the proximate cause of the loss in this case.

A bank is bound by contractual obligation to the exercise of due care in the payment of checks bearing the genuine signatures of its depositors. Its negligence defeats the defense of negligence on the part of the depositor. (*Critten* v. *Chemical Nat. Bank, supra,* p. 232.) If it had a right to assume that the checks were the genuine checks of its depositors because the signatures were genuine and no alterations appeared to excite suspicion, it owed a duty to them to make payment only to the payees therein named or to their order. It made no inquiry as to the identity of the payees or as to the genuineness of their purported indorsements. Plaintiffs did not relieve it from that duty. It paid the checks to the makers' employee, Hunold, without inquiry because it had misplaced confidence in him. If a stranger representing himself as " C. Swift," for example, had presented the check, the bank would have been bound at its peril to see that he was, in truth, the payee entitled to receive payment thereon. (*Bank of British North America* v. *Merchants Nat.*

*Bank,* 91 N. Y. 106, 111.) The depositor has a right to rely on the bank to be careful not to pay out money to the wrong person. Nothing in the form of the altered checks estopped the plaintiffs from insisting on that right. If by their negligence the checks had been made payable to genuine payees who received the amounts thereof, or if the amount of the checks had been raised through their carelessness, the case would have been different. The bank might then rely on the form of the checks and charge the plaintiffs with an estoppel. If we assume that the bank might rely on the checks as being genuine in form, still it did not exercise any care to identify the payees.

The bank knew Hunold as the employee of plaintiffs. It failed to observe the suspicious circumstances that the checks he was cashing were payable to " Cudahy " and " Swift," names of firms with which plaintiffs transacted business through the bank; that the indorsements of the payees and Hunold bore a striking resemblance and that these " Cudahy " and " Swift " checks were being presented by Hunold for payment with some regularity. The jury might have found negligence from these facts alone.

We reach the conclusion that the plaintiffs may have been negligent in drawing the checks but that their negligence was not the cause of the failure of duty on the part of the bank in paying the money to Hunold without proper identification of the payees and of their purported signatures. It follows also that their negligence in failing to discover the forgeries does not prevent a recovery from the negligent bank. (*Critten* v. *Chemical Nat. Bank, supra.*) The loss by the bank was induced by its trust in the unworthy Hunold rather than the negligence of its depositors.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.