Weiner, Appellant, *v.* The Pennsylvania Company for Insurances on Lives and Granting Annuities.

Argued October 4, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Paul A. Liebman,* with him *Leo Weinrott,* for appellant.

*Edward M. David,* with him *Edmund R. Finegan* and *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY ARNOLD, J., March 4, 1947:

The plaintiff signed her name to a check drawn upon the defendant bank of which she had been a depositor for years. Except for her signature nothing was written on it. The check was stolen and completed by filling in the amount, $250, the date and the name of the payee (fictitious). The defendant bank paid the check to the fictitious payee, who properly indorsed it. The plaintiff-drawer sued the drawee bank in assumpsit for the amount thereof, alleging negligence of the bank, inter alia, in failing to identify the person paid. The court below entered judgment for the defendant upon an affidavit of defense raising questions of law.

The duty of a bank toward its depositors rests upon an implied contract. It is bound to honor, according to tenor, the depositor's checks bearing genuine signature where the latter's balance is sufficient.[1] A failure to honor such a check is a breach of the contract subjecting the bank to damages, which may be punitive.

On the other hand, the bank may only pay upon the signature of the drawer, and if that be not genuine, i. e., forged, the bank, if it pays such check, is liable to the depositor, because it has no written order from the depositor. Even though the forgery of the drawer's signature is done so skillfully as to practically defy detection, such as an exact simulation, the bank is liable. Since this liability of the bank is therefore absolute, even though it exercises the highest possible degree of care,

---

[1] Unless the balance is subject to lien or claim.

such liability is purely for breach of contract, i. e., the absence of the signed order of the depositor. So, too, if the check bears the genuine signature of the drawer, but is paid by the bank upon the forged indorsement of the payee, the bank is liable because it has paid otherwise than as directed by the written order. In both such cases the bank's liability is absolute unless an estoppel bars the maker from alleging the forgery. It is no defense to show investigation, identification, good judgment or prudential conduct. If the signature and indorsement are genuine and the payment follows the depositor's written order, the bank is no less protected by law where it does nothing to determine the genuineness. The bank pays at its peril, with or without investigation or identification, which things are had by the bank solely for its own safety, for the depositor's rights are unaffected either by their presence or absence. No *duty* in these respects is owed to the depositor, but the liability in such cases flows from the breach of the contract. There is no room for any doctrine of negligence, which in turn depends upon improper fulfillment of a duty of care.

Another type of case is where the check has been "raised", the signatures of the maker and the payee being genuine, and delivery being intended. Of such alteration the check carries its own evidence, and hence the drawee is liable unless the maker is estopped, and to determine this the law examines the care used by the respective parties (balancing or contrasting negligence) as where the check as drawn by the maker was written in such careless fashion as readily to lend itself to, or indeed invite, an alteration highly difficult to detect. We find no raised check cases among our appellate court decisions, but in *Leas et al. v. Walls,* 101 Pa. 57, a "raised" note case, the drawer was held to the duty of ordinary care in guarding against alterations. Usually it is held that the depositor may be made to suffer the loss if his negligence, by facilitating the alteration, contributed to induce the payment, provided the bank be free from negligence. This is on the theory that the

depositor should take usual and reasonable precautions. Such defense by the bank has been held good in New York,[2] California [3] and Tennessee.[4] To the contrary are the holdings in Texas,[5] Kentucky [6] and Oklahoma.[7] In England apparently the bank is held liable unless there also appear in the case elements of entrusting such check (easily susceptible of alteration) to an employe or other person acting for the drawer, who himself altered it.[8]

Where a check is signed by the maker in blank and taken and filled in, we find no decisions in Pennsylvania.[9]

---

[2] *Gutfreund v. East River Nat. Bank*, 167 N. E. 171 (251 N. Y. 58).

[3] *Glassell Development Company v. Citizens' National Bank*, 216 Pac. 1012; *Leather Mfrs.' National Bank v. Morgan*, 117 U. S. 96, 29 L. ed. 811.

[4] *Foutch v. Alexandria B. & T. Co.*, 149 S. W. 2d 76, a very well reasoned opinion.

[5] *Glasscock v. First National Bank*, 266 S. W. 393.

[6] *Commercial Bank v. Arden & Fraley*, 197 S. W. 951.

[7] *First National Bank v. Ketchum*, 172 Pac. 81.

[8] *MacMillan v. London Joint Stock Bank*, 2 K. B. 439—1917.

[9] In *Robb v. Pennsylvania Company, etc.*, 186 Pa. 456, 40 A. 969, 41 A. 49, the question before the court was whether the drawer's possession of a rubber stamp facsimile signature estopped him from asserting that a check paid by the bank was a forgery, the forgery being accomplished by means of the stamp. The majority view was that the precautions of the depositor were for the jury. Justice WILLIAMS and Chief Justice STERRETT filed a dissenting opinion and wanted the law applied *as in a blank check case.* The dissent then stated the law of blank checks, which the majority of the court did not controvert, only denying the application of the rule to a rubber stamp forgery. The law was thus stated at page 458a: "When an account is opened at a bank by the deposit of money the depositor leaves his genuine signature with the banker for his guidance and protection in the payment of checks. When checks are presented bearing this signature they must not be refused, but if the signature is a forgery, no matter how skillfully it is done or how difficult of detection, they must not be paid. . . . But if the depositor executes a check and for any reason leaves it on his table where it is found by another, who fills it up, presents it at bank and receives payment upon it, this is a good payment by the bank, and the loss is that of the depositor for the check was signed by him. If intead of leaving his check upon the table the drawer had deposited it in a drawer

In this type of case the signatures are genuine, and the check bears no evidence on its face that delivery was not intended; and there is no *alteration* of the writing or figures. In other jurisdictions there is a divergence of opinion. Indiana,[10] Missouri,[11] New York[12] and California[13] hold that the loss falls upon the depositor, for reasons which will hereafter appear.

It has been said[14] that three divergent theories exist, which will be discussed seriatim. First, a strict and literal construction of §15 of the Negotiable Instruments Law.[15] This view does not commend itself, for that section relates to "holders" or any person whose signature was placed thereon before delivery. A "holder" takes the instrument *prior* to presentation for payment. Since the drawee bank takes the instrument at and for payment, it is not a holder. Section 15 applies to both notes and checks, but since checks are *required* to be paid by the drawee bank, and since the discount or purchase of notes is not obligatory, the construction of

within his safe, locked the safe, and put the key away in a box in his office . . . nevertheless if a clerk or employee had taken the key from the box, unlocked the safe, abstracted the check and used it for his own benefit, its payment by the bank would have bound the depositor. His loss would have been due not to the failure of the banker to distinguish his genuine signature but to the crime of his employee who obtained it surreptitiously. One of two innocent persons must suffer because of the payment of the check, and the law determines that the loss shall fall upon him whose act or omission made the loss possible. If the depositor had not signed his check and left it where it was possible for a criminal to appropriate it, palpably the loss could not have happened."

[10] *Citizens' National Bank v. Reynolds*, 126 N. E. 234.

[11] *S. S. Allen Co. v. Bank of Buchanan County*, 182 S. W. 777.

[12] *Trust Co. of America v. Conklin*, 119 N. Y. S. 367.

[13] *Rancho San Carlos, Inc., v. Bank of Italy, etc.*, 11 Pac. 2d 424, and *Edelen v. Oakland Bank of Savings*, 178 Pac. 737.

[14] (N. J.) *Joseph Heinberg, Inc. v. Lincoln National Bank*, 113 N. J. L. 76, 172 A. 528.

[15] Where an incomplete instrument has not been delivered, it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder, or against any person whose signature was placed thereon before delivery: §15 of N. I. L., 56 P.S. 20.

§15 as it relates to checks ought to be less literal and strict. Second, that the right of recovery by the depositor shall be based on contrasting or balancing the negligence between the drawer and the bank, the ultimate fact of liability (and hence the estoppel) to be determind by the jury under the particular facts. This is the law of New Jersey.[16] The difficulty with this view is that while in theory the jury determines whether there should be an estoppel under the facts of the case, in practice it may consider the financial, rather than the legal, responsibility. In addition the estoppel itself should be for the court under the facts found, and not for the jury. The third view, which we adopt, is the application of the maxim that as between two innocent parties, the bank and the depositor, liability should be borne by the one, i. e., the depositor, who made the loss possible.[17] This is estoppel in pais. Apparently the rule was first applied by our appellate courts in 1833 in *President, Merchants' Bank, v. President, Bank of U. S.,*

---

[16] *Joseph Heinberg, Inc., v. Lincoln National Bank,* 113 N. J. L. 76, 172 A. 528.

[17] The rule is variously stated in Pennsylvania: ". . . the loss should fall on the one whose act facilitated it": *Ervin v. City of Pittsburgh,* 339 Pa. 241, at page 256, 14 A. 2d 297. ". . . the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud": *Gramigna v. Board of Ministerial Pensions, etc.,* 330 Pa. 335, at 336, 199 A. 177. ". . . he who clothed the wrongdoer with the power to injure must bear the loss": *Keller v. N. J. Fidelity & Plate Glass Ins. Co.,* 306 Pa. 124, at 135, 159 A. 40. ". . . [the loser] must be the one who places it within the power of the third person to commit a wrong": *Stirling's Petition,* 292 Pa. 194, at page 200, 140 A. 869. ". . . the one who makes possible the commission of the fraud is the loser": *Williams v. Cook,* 289 Pa. 207, at page 213, 137 A. 232. ". . . he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act": *Dowd v. Crow,* 205 Pa. 214, at 218, 54 A. 780. ". . . he must bear the loss whose act or neglect has been the occasion of the suffering": *Jeffers v. Gill,* 91 Pa. 290, at page 295. ". . . he shall suffer who by his own acts occasioned the confidence and the loss": *Garrard v. Haddan,* 67 Pa. 82 at page 85. ". . . the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud": *Kienberger v. Lally,* 130 Pa. Superior Ct. 583, at page 590, 198 A. 453.

4 Rawle 318, although a similar maxim or rule existed from the early days of the law. It has been as recently enunciated as *Ervin v. City of Pittsburgh,* 339 Pa. 241, 14 A. 2d 297, and *Kienberger v. Lally,* 130 Pa. Superior Ct. 583, 198 A. 453. The effect of the rule is to bar the assertion of a given claim or a defense, by forbidding the same.

In the instant case the plaintiff signed the check in blank, thus putting it in the power of an unauthorized person to fill it in and present it for payment. The depositor's act made the loss possible and caused it, and enabled the thief to commit the fraud. The depositor-plaintiff's acts in this respect are a bar and an estoppel in her suit against the drawee bank, thus preventing any recovery on her part. To hold otherwise would require the bank to communicate with the drawer as each check was presented, in order to find out if delivery was intended. This is too much to be expected, and to place the burden of loss or its chance on the depository if it does not interview the maker, is neither fair nor compatible with public interest. Checks have come to constitute the normal medium of exchange. They are highly convenient to the ordinary business or non-business depositor. They keep books for him. In a very large proportion business and personal spending is accomplished by checks.[18] To say that the depository shall be required to call upon the depositor to determine whether a check bearing his signature was actually delivered is to set at naught all of the modern conveniences accomplished by their use.

Judgment affirmed.

---

[18] Some idea of the vast increase in check payments in only a part of Pennsylvania is obtained from the Federal Reserve Bank of Philadelphia. Debits to individual accounts in Philadelphia for the past ten years have been as follows:

| | | | |
|---|---|---|---|
| 1937 | $16,344,752,000 | 1942 | $21,944,601,000 |
| 1938 | 14,553,165,000 | 1943 | 26,307,761,000 |
| 1939 | 15,813,654,000 | 1944 | 28,287,668,000 |
| 1940 | 16,629,622,000 | 1945 | 30,074,082,000 |
| 1941 | 21,460,897,000 | 1946 | 32,139,495,000 |