Louis Grossman, J.
This case is considered on a stipulation of facts amplified by testimony in open court. It appears that plaintiff Fidelity and Deposit Company of Maryland is the bonding company and subrogee of Hertz, Neumark & Warner, *510 stockbrokers and members of the New York Stock Exchange (hereinafter referred to as Hertz).
In April, 1966, Hertz employed one Richard Jonny as a margin clerk who by May, 1966 had become a registered representative with the firm. On or about May 2, 1966, Jonny received a phone call from an accountant and friend, David Weiss, who stated that he represented two individuals, Finkel and Elkies, who wished to sell certain stock shares. Weiss volunteered information to Jonny for the respective customers’ opening account cards.
On May 6, 1966 and on May 13, 1966 the certificates of stock in question were delivered to Hertz by an unidentified messenger not in Hertz employ. The stock was sold. Hertz then issued its checks as follows: On May 12, 1966 check No. 8599 in amount of $5,536.65 upon Chemical Bank New York Trust Company (hereinafter referred to as defendant) to the order of Harry Elkies c/o Old Greenwich Equity Corp., 303 Fifth Avenue, N. Y., N. Y. and on May 18, 1966 check No. 8950 in the sum of $2,675.88 upon defendant to the order of Samuel Finkel c/o Old Greenwich Equity Corp., 303 Fifth Avenue, N. Y., N. Y.
The latter check bearing the following purported indorsements
‘£ Samuel Finkel ’ ’
‘1 Irving Tamon ’ ’
“ Pay any Bk, Bkr., or Tr. Co.
PEG First National City Bank of New York, N. Y.” was deposited or cashed at the First National City Bank which secured payment thereon from defendant on May 20, 1966 at which time defendant debited and charged the account of Hertz.
Check No. 8599 bears the following purported indorsements:
“ Harry Elkies ”
££ Pay to the order of Old Greenwich Equity Corp.”
“ For Deposit Only- — Old Greenwich Equity Corp.”
“ Pay any Bk, Bkr. or Tr. Co., Peg 5/12/66
Valley National Bank of Long Island, Valley Stream, N. Y.”
It was deposited or cashed at the account of Old Greenwich at Valley National Bank of Long Island, and sent to Irving Trust Co. for collection and then paid by defendant on May 13, 1966 at which time defendant charged the account of Hertz. At the time of deposit into the Old Greenwich account said account was in an overdraft situation; and after that deposit Old Greenwich had the complete use of the proceeds and no checks were drawn out of the account to transfer funds to Harry Elkies.
In June, 1966 it transpired that the respective certificates of stock were stolen goods, -and that the purported signatures of *511 Samuel Finkel and Harry Elkies on both the transfers and the checks were false and unauthorized.
Hertz thereupon notified defendant and demanded reimbursement. When defendant failed and refused to pay, plaintiff pursuant to a bonding agreement made Hertz whole and became subrogated to its rights. The instant action having commenced, the defendant has claimed over against the two indorsing banks; First National City, and Valley National Bank of Long Island.
Defendant’s answer pleading general denial and good faith has been adopted by the third-party defendants. In trial briefs and in colloquy before the bench the parties defendant have also urged the ‘ ‘ impostor rule ’ ’; and negligence on the part of Hertz.
It has been stipulated by the parties as follows among other things:
1. That the true owners of certificates involved herein are: Samuel Finkel and Harry Elkies, respectively.
2. That the two certificates of stock in question were each stolen and duly reported stolen in 1963 and that replacement certificates were duly issued.
3. That neither Samuel Finkel nor Harry Elkies ever knew or dealt with the Old Greenwich Equity Corp. or David Weiss or Hertz, Neumark & Warner or one Bichard Jonny.
4. That neither Samuel Finkel nor Harry Elkies had knowledge of or connection with the issuance of Hertz checks Nos. 8950 or 8599; and that each has examined his purported signature and would testify that said signature is not his signature and was not written authorized or ratified by him.
5. That neither Finkel nor Elkies has received the proceeds of said checks or any part thereof directly or indirectly.
6. That as to each check one of the third-party defendants guaranteed all prior indorsement.
A hearing was held in open court in which it further developed that Hertz made only casual inquiry as to the authenticity of the Finkel and Elkies applications, or as to the matter and signature appearing in the respective stock certificate transfers. As a result of that hearing the court has made findings that (a) any confederacy or connivance between David Weiss and either Samuel Finkel or Harry Elkies has been negatived; (b) that connivance, confederacy or misconduct on the part of Bichard Jonny has not been established; (c) that any negligence or omission on the part of Hertz was not the proximate cause of defendant honoring the indorsements on the checks in question.
The court here grants oral motions to conform the pleadings to the proofs particularly as to deeming that the affirmative *512 defenses of the “ impostor rule ” and “ estoppel by negligence ” have been properly pleaded.
The court is mindful that in these impostor or embezzlement cases the person ultimately liable even in a civil sense is the impostor or embezzler. The immediate task is always to apply a workable and stable rule of thumb to fix the initial loss lest the wheels of commerce grind to a tortured stop. As phrased by Judge Breitel in his dissent in Hartford Acc. & Ind. Co. v. Walston & Co. (21 N Y 2d 219, 238): “ From a pragmatic point of view, the allocation of fault in this case, or this kind of case, is not helpful. This fact is that brokers and their insurance carriers are as careful or as careless as the balancing of profit from speedy transactions against the cost of careful but slowing procedures requires, and the slack is taken up by fluctuations in the insurance expense. ’ ’
The solution adopted by our Legislature in 1962, effective September, 1964, is section 3-405 of the Uniform Commercial Code which provides: “ (1) An indorsement by any person in the name of a named payee is effective if (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.
“ (2) Nothing in this section shall affect the criminal or civil liability of the person so indorsing.” (L. 1962, ch. 553; as amd. L. 1964, ch. 476., § 2, eff. Sept. 27, 1964.) This statute being in derogation of the common law must of course be strictly construed (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 148, 153, 301; Matter of Foley v. McNab, 42 Misc 2d 460).
In September, 1964 the common law stood as follows. The relation existing between a bank and a depositor being that of debtor and creditor the bank can justify a payment on the depositor’s account only upon the actual direction of the depositor (Critten v. Chemical Nat. Bank, 171 N. Y. 219; Seaboard Nat. Bank v. Bank of Amer., 193 N. Y. 26.) The drawee of a bill or a check or the person purchasing it takes the paper relying solely on the reputed responsibility of their transferors and its apparent genuineness and they therefore deal at their peril (Crawford v. West Side Bank, 100 N. Y. 50; American Sur. Co. v. Empire Trust Co., 262 N. Y. 181).
The ‘ ‘ impostor rule ’ ’ originally developed as an exception in face to face dealings, and later was extended to mail swindles *513 having the same general characteristics. Inherent in this rule is the concept that as between the impostor and the rest of the world an impostor-payee acquires title to commercial paper issued by the drawer-maker whose only recourse is then to the impostor, subsequent indorsements notwithstanding. (United States v. Bank of Amer., 274 F. 2d 366.)
More specifically, New York’s application of the common law revolved about the ‘1 dominant intent ’ ’ of the drawer. Where the drawer dealt with ‘ ‘ A ” and delivered a check to his order as “ X ”, nice distinctions had to be drawn to determine whether the wrong was forgery or something else. (Cf. Strang v. Westchester County Nat. Bank, 235 N. Y. 68.) In determining whether there was a forgery, the true test was whether or not the indorsement of the name of the payee was made by the person who was intended by the drawer to be the payee (Halsey v. Bank of New York & Trust Co., 270 N. Y. 134).
Thus, if the drawer intended to pay the impostor physically present and identified by prior dealings the ‘ ‘ impostor defense ’ ’ held (Mohr v. Lawyers Trust Co., 282 N. Y. 770). But if the drawer clearly intended to pay the payee named and in his true identified capacity, then all unauthorized indorsements were forgeries whether the impostor was physically present at the inception or not (Cohen v. Lincoln Sav. Bank, 275 N. Y. 399). Note that the two cases last cited concerned independent dupes caught in the same net.
Finally, where the impostor misrepresented himself as the agent of the proposed payee, as between the drawer who delivered a check or draft to an impostor representing himself as the agent of the payee and the drawee who pays it or a holder who purchases it, the courts have held that the indorsement is a forgery and ensuing loss falls on the one who pays or purchases (Strang v. Westchester County Nat. Bank, 235 N. Y. 68, supra; cf. Ann. 81 ALR 2d 1365, 1398; 41 N. Y. Jur., Negotiable Instruments, § 263 and footnote).
The current statute, section 3-405 of the Uniform Commercial Code is designed to avoid dilemma by eliminating traditional questions of physical presence, prior dealings, or dominant intent. The necessity of strict construction is ever present (cf. Rankin v. Shanker, 23 N Y 2d 111). In the instant case paragraphs (b) and (c) of subdivision (1) are quickly out of consideration. No collusion by employees has been established. Bather it becomes obvious that the checks were made out to the owners of the stock and were clearly intended to be paid to the true owners. We distinguish Philadelphia *514 Title Ins. Co. v. Fidelity-Philadelphia Trust Co., (419 Pa. 78) where the impostor impersonated one of the payees and then procured delivery through a confederate. Here there was no attempt at impersonation. There was only misrepresentation of agency.
Be-examining paragraph (a) of subdivision (1) we find no affirmative indication of intent to change the common law as to “ misrepresentation of agency” situations. As stated in McKinney’s Consolidated Laws of New York official commentaries following section 3-405 of the Uniform Commercial Code, (p. 256, comment No. 2): “ ‘ Impostor ’ refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement.” The foregoing is entitled to great weight in interpreting the statute in the absence of specific language to the contrary (1956, Beport of N. Y. Law Rev. Comm., p. 25). The comment quoted is applicable to cases such as the one before us (cf. Brady, Bank Checks [4th ed., 1969], § 15:19, p. 518).
Accordingly, we find that the ‘ ‘ impostor defense ’ ’ does not hold on the facts here present. The defendants have also argued the negligence of Hertz in failing vigorously to check the customer’s application information and in failing to discover the fraudulent execution of the stock transfers, (cf. Uniform Commercial Code, § 3-406). We also note Hertz’ affirmative acts of indorsing one stock transfer and of starting the now questioned checks into circulation.
We have also considered the so-called “ know your customer rule ” promulgated by the New York Stock Exchange. We take judicial notice that it is an idealization honored more in the breach than in the observance. We can accord it the weight neither of law nor of established business custom.
It is true that some cases recognize a quasi-estoppel situation where the loss of the drawee was occasioned by the negligent act of .the drawer known to the drawee and on which it had a right to rely. (Cf. Hartford Acc. & Ind. Co. v. Walston & Co., 21 N Y 2d 219.) That doctrine is frequently applied to alteration cases or conniving employee cases or to cases in which a series of forgeries is involved.
We do not condone Hertz ’ lack of diligence or efficiency. However, where negligence is pertinent, the negligent conduct must be shown to be the proximate cause of the loss. (Cf. Gutfreund v. East Riv. Nat. Bank, 251 N. Y. 58; Jewett v. Manufacturers Hanover Trust Co., 48 Misc 2d 1094.)
*515 Here there is in question neither an alteration, a series, nor a conniving employee; nor was any specific act or omission of Hertz the proximate inducement for defendants to honor the respective checks.
We therefore reject the affirmative defense of negligence. We find the purported indorsements of the payees to he forgeries.
Let judgment enter in favor of plaintiff Fidelity and Deposit Company of Maryland in the amount of $8,212.43 with appropriate interest; and in favor of defendant-third-party plaintiff over against third-party defendant Valley National Bank of Long Island in the amount of $5,536.55 with appropriate interest ; and in favor of defendant-third-party plaintiff over against third-party defendant First National City Bank in the amount of $2,675.88 with appropriate interest.
All motions not herein or heretofore specifically granted are deemed denied.