# Froio et ux. *v.* Armstrong et al., Appellant (No. 1).

*Principal and agent—Fraud—Purchase at sheriff's sale—Resale —Bonus—Mortgage—Fraud on mortgagee—Negligence of mortgagor—Equity—One of two innocent parties.*

1. Where one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss should fall on him by whose act or omission the wrongdoer has been enabled to commit the fraud.

2. Where an agent undertakes to purchase real estate at a sheriff's sale, but purchases it for himself, conceals the price he paid from his principal and an innocent third person who loans the money to complete the purchase, and effects a resale at a greatly enhanced price to his principal, who negligently and without proper examination executes mortgages to the lender, the latter, who was in no way a party to the fraud, and was without knowledge of the facts of the agency, cannot be enjoined from suing out his mortgages.

3. In such case, the lender of the money cannot be considered as in the position of an assignee of the mortgages, and thus affected by the equities existing in favor of the mortgagor as against the agent.

4. The lender having received a bonus or other profit from the transaction, must deduct it from the amount of the claim on his mortgage.

Argued February 6, 1923. Appeal, No. 231, Jan. T., 1923, by defendant, Henry H. Hall, from decree of C. P. No. 4, Phila. Co., March T., 1921, No. 7089, on bill in equity, in case of Joseph Froio and Angelina Froio v. William H. Armstrong and Henry Hall. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity for injunction, accounting and cancellation of mortgages. Before McCULLEN, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs by AUDENREID, P. J., and MC-CULLEN, J.  Defendant, Henry H. Hall, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Owen J. Roberts,* with him *George C. Chandler,* for appellant.—The innocent appellant is not chargeable with a loss rendered possible only by the misplaced confidence and the acts of plaintiffs: Bair's Est., 20 Pa. Superior Ct. 85; Jeffers v. Gill, 91 Pa. 290; Pepper v. Cairns, 133 Pa. 114; Weir v. Trust Co., 263 Pa. 72; Shaub v. Shaub, 71 Pa. Superior Ct. 456; Wolfgang v. Shirley, 239 Pa. 408; Shattuck v. Cement Co., 205 Pa. 197.

The fraud of the codefendant, Armstrong, had its inception and consummation in his acts as agent for plaintiffs: Pepper v. Cairns, 133 Pa. 114; Gunster v. Scranton, etc., Co., 181 Pa. 327.

Appellant is a bona fide purchaser for value of plaintiffs' second and third mortgages.

The codefendant, William H. Armstrong, was not the agent or partner of appellant in the transactions involving the premises 33 North Eleventh Street.

*Francis B. Bracken,* with him *Arthur Littleton,* for appellees.—Defendant Hall was properly enjoined by the decree of the court below from enforcing any personal liability of plaintiffs on the bonds fraudulently procured from them by his codefendant, Armstrong, for the reason, among others, that they must be regarded as the proceeds of a transaction carried out by Armstrong pursuant to an arrangement between him and his codefendant, Hall, for the joint benefit of both.

Even if Hall, as Armstrong's associate in the transaction, were not for this reason affected by the consequences of the fraud of Armstrong in procuring the bonds, he was in any event in no better position than an assignee of the bonds from Armstrong, subject to all the defenses which the mortgagors would have as against

Armstrong: Earnest v. Hoskins, 100 Pa. 551; Carothers v. Sims, 194 Pa. 386; Myerstown Bank v. Roessler, 186 Pa. 431; Wilson v. Ott, 173 Pa. 253.

Hall's misplaced confidence in Armstrong is the cause of any loss he may sustain, and his remedy is against Armstrong and not against plaintiffs: Gunster v. Scranton, etc., Co., 181 Pa. 327.

OPINION BY MR. JUSTICE SCHAFFER, March 19, 1923:

The defendant, Henry H. Hall, appeals from a decree adjudging two bonds and mortgages held by him to be void, and directing him to deliver them up to plaintiffs for cancellation. The facts in the record are somewhat complicated and a review of all of them would accomplish no useful purpose.

The wrongs for which plaintiffs seek redress are due to a most palpable fraud committed by the defendant, Armstrong, of which they and the other defendant, Hall, were the victims. Armstrong was a real estate agent, the Froios, plaintiffs, husband and wife, had been concerned in a number of transactions with him, involving the purchase and sale of various properties; Hall was a friend and patron of Armstrong, who also had dealt with him in real estate, at times loaning money on mortgage.

Armstrong entered into an arrangement with the Froios to bid in for them a hotel property, about to be sold at sheriff's sale; he obtained from them $8,500 to enable him to make settlement with the sheriff. It would seem that Armstrong's first intention was, that he and the Froios, should be jointly interested in the property and in the running of the hotel. Whatever his initial relation to them was, whether that of agent or joint venturer, becomes inconsequential, in view of his subsequent conduct, as his ultimate purpose was to cheat them and Hall. To accomplish this, he misrepresented to plaintiffs the price he had paid for the property, leading them to believe it cost him much more than it did. He bid it in at the sale for $16,100, subject to a first mortgage of

$22,000; its actual cost to him was therefore $38,100. Instead of taking title himself, or putting it in plaintiffs, he had the sheriff's deed made to his brother-in-law, and the latter, when the transaction came to consummation, made title to them.

Pursuing his fraudulent design, Armstrong applied to Hall, two days after the sheriff's sale, for financial aid, which he said he required to make settlement with the sheriff; falsely representing to Hall that he had purchased the property for himself, and would require $58,100 to complete the purchase and pay off alleged incumbrances and claims. Subsequently he informed the latter that he had sold the property to plaintiffs for $65,100 and persuaded Hall to take a second mortgage on the property for $22,000 and a third mortgage for $12,500. As an inducement to take these mortgages, he agreed to pay Hall a bonus on the third mortgage, and one-half of what he, Armstrong, would realize from the sale to plaintiffs, which he falsely stated as being the difference between the pretended cost to him of $58,100 and the selling price, $65,100. To provide the money for the mortgages, in lieu of cash, Hall assigned to Armstrong other mortgages aggregating in amount $33,300 and turned over to him $7,500 in cash. Armstrong used this sum and the $8,500 previously received from plaintiffs in settlement with the sheriff.

After thus getting control of the property, Armstrong induced the plaintiff, Angelina Froio, to enter into an agreement to purchase it for $65,100 and to execute a second mortgage to Hall for $22,000 and a third mortgage to him for $12,500. The trial judge found the property never had a higher market value than $40,000. Subsequently Armstrong procured from plaintiffs two additional sums aggregating $2,562.12 on the representation that they were necessary to complete the purchase from the sheriff.

Settlement by plaintiffs was made at the office of a title company where the two mortgages to Hall were

executed by Angelina Froio, they having been previously signed by her husband who could not read or write; she could. She testified she did not read them, and the husband, that they were not read to him. Armstrong caused a deed of the premises to be executed to Angelina Froio by his brother-in-law, which he, Armstrong, placed on record. Hall was not present at the settlement and was not brought in personal contact with the plaintiffs. Following the settlement, Hall received the second and third mortgages and Armstrong paid him $2,700 as his share of the alleged profits and $550, the bonus agreed upon on the third mortgage.

The day following the settlement, Angelina Froio received a copy of the settlement certificate from the trust company, and, upon investigation, ascertained the real price paid by Armstrong at the sheriff's sale. She immediately charged him with the fraud and made demand for the return of the money she had paid, which he undertook to refund; this he did not do. Hall subsequently entered judgment against plaintiffs on the bond accompanying his third mortgage. The property was thereafter sold at sheriff's sale on the first mortgage, after payment of which a fund still remains in the sheriff's hands.

Armstrong not having refunded their money, plaintiffs filed this bill in equity against him and Hall, reciting, among others, the facts we have stated, charging that the sale to them, and the creation of the bonds and mortgages to Hall in connection therewith, were the result of a fraudulent conspiracy between the defendants, praying for an accounting, and that Hall be enjoined from proceeding against them on the bonds and mortgages, and be required to satisfy the judgment entered on the $12,500 bond and for general relief.

The chancellor who heard the case determined that Hall was not aware of the fraud practiced on plaintiffs by Armstrong, and that he, Hall, was not a party to a fraudulent conspiracy; he entered a decree requiring

Armstrong to refund the money procured from plaintiffs, and as to Hall, although he was found not to have been a party to the fraud, or a conspirator, declaring the bonds and mortgages given to him invalid, enjoining him from enforcing any personal obligation thereon against plaintiffs and directing that they be delivered up to them for cancellation. With that part of the decree which affects Hall and his mortgages we cannot agree. We base our difference with the court below entirely upon its own findings.

Plaintiffs' counsel found their contention, that the bonds and mortgages given to Hall are invalid, upon this proposition, which we quote from their argument: "In substance, therefore, the transaction resulted in the procurement by Armstrong of the bonds and mortgages; and, as he was under obligation to assign them to Hall, he had them drawn in favor of Hall in the first instance, thus avoiding the necessity of taking them himself and subsequently assigning them to Hall. Under these circumstances, Hall must be treated as in effect an assignee of the mortgages for a consideration which wholly passed to Armstrong." But the difficulty with this is that the transaction did not result in the procurement by Armstrong of the bonds and mortgages. They were executed by plaintiffs to Hall, whose connection with the transaction was as a lender of money to the purchasers whom he did not know. Hall could not in any aspect of the case be treated as in effect an assignee of the mortgages— he bore no such relation as that to them and no such relation could have been contemplated. Plaintiffs' plight grows out of their having executed the mortgages without reading them, or fully investigating or understanding the transaction in which they were engaged. If Mrs. Froio had given the same attention at the settlement that she did to the settlement certificate next day, she would not have executed the mortgages until there was a full explanation, and, therefore, would not have signed them at all, and Hall, who admittedly gave value for them and

who was entirely innocent of the fraud would have been unharmed. The execution and delivery of the mortgages by plaintiffs was the thing that led to their undoing and to the consummation of the wrong both to them and to Hall.

The court below pursued the same line of thought as plaintiffs' counsel, as is evidenced by this quotation from the opinion: "Viewing Armstrong as the partner or agent of Hall in the attempted sale to the plaintiffs and in the obtaining from them of the bonds and mortgages, or viewing Hall as Armstrong's assignee of the bonds and mortgages, the result is the same, i. e., that Hall holds the obligations subject to the plaintiffs' equities against Armstrong." But Hall was not the partner of Armstrong, or his agent in the sale, nor was he Armstrong's assignee of the mortgages. From the facts as they were shown and from the court's own findings, it cannot be successfully maintained that Hall holds plaintiffs' obligations subject to their equities against Armstrong. He, Hall, was as innocent in the transaction as they were, and as much Armstrong's dupe, the only difference between them being, that through the execution of the mortgages they put the means in Armstrong's hands of defrauding Hall. "Where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud": O'Connor v. Clark, 170 Pa. 318, 321; Shattuck v. American Cement Co., 205 Pa. 197.

The inequity of the court's decree against Hall appears in its own findings. We quote therefrom: "On or about May 5, 1920, the defendant, Armstrong, conceived the idea and formed the design of cheating and defrauding the plaintiffs *and the said Henry H. Hall,* for his, Armstrong's, personal benefit, gain and advantage, by dealing with the said premises......which he had purchased at sheriff's sale for the plaintiffs as if the said property were his own and had been purchased and acquired by him at

said sheriff's sale for himself......To carry out his fraudulent design to cheat and defraud the plaintiffs *and Hall* the defendant, Armstrong, on or about May 5, 1920, falsely stated and falsely represented to said Henry H. Hall that he, the said Armstrong, had purchased said property at sheriff's sale for himself under a bid making the cost of the property $58,100......Armstrong again saw Hall and falsely and fraudulently stated to him that he had sold the said property to the plaintiffs for $65,100. ......Hall did not know that Armstrong bought the property at the sheriff's sale for the account of and on behalf of the plaintiffs, but he placed credence in and reliance upon the false statement of Armstrong that the latter had bought at the sheriff's sale for himself at a cost of $58,100, and the further false statement of Armstrong, that the plaintiffs had agreed to buy the property from him for $65,100.......Hall in good faith believed that Armstrong had acquired the premises for his own account and proposed to resell the same for his own account. Neither at the time of the transactions mentioned in the bill nor until long thereafter, did Hall know or have reason to believe or suspect that Armstrong had practiced any fraud or deception on the plaintiffs in connection with the sale to them of [the property]. Hall paid a full consideration to Armstrong for the mortgages [and] at no time conspired with Armstrong to cheat or defraud the plaintiffs."

On these findings, we fail to see how the conclusion could be reached which is embodied in the decree, that the bonds and mortgages given by the plaintiffs to Hall are null and void, and that he be ordered to deliver them up to plaintiffs for cancellation. We think, however, it would not be just to permit Hall to collect the full amount of his bonds from plaintiffs, considering that there was paid to him a bonus and part of the alleged profit in the transaction; this money in reality came out of plaintiffs' pockets and the amount of it, $3,250,

should be credited by Hall on his bonds. It is ordered and directed that such a credit shall be allowed by him.

The decree so far as it relates to the defendant, Henry. H. Hall, is reversed and set aside; the costs to be paid by the defendant, William H. Armstrong.