Plunkett and Murray *v.* Raniszewski et ux., Appellants.

Argued December 14, 1932. Be-
fore TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM,
BALDRIGE, STADTFELD and PARKER, JJ.

*Joseph V. Somers,* and with him *Charles Lehr,* for
appellant.—The authority of an agent to collect the
principal of a mortgage may be implied from the fact
that he has previously received and receipted for
money and his acts have been approved by the mort-
gagee. Williams v. Cook, 289 Pa. 207, and Patterson
v. Van Loon, 186 Pa. 367.

*Raymond A. White, Jr.,* and with him *Maurice W.
Sloan* of *Sloan, White and Sloan,* for appellees, cited:
Borland v. Wible, 94 Pa. Superior Ct. 41.

OPINION BY PARKER, J., April 17, 1933:

This appeal is from an order of a common pleas
court refusing to open a judgment entered by plaintiffs
against the defendants upon a bond secured by a mort-

gage of even date therewith and containing a warrant of attorney for the confession of judgment thereon. The evidence produced on a rule to show cause why the judgment should not be opened disclosed that an amount sufficient to pay the claim in full had been paid to a third party who failed to turn over all the amounts so paid to the mortgagees and misappropriated a part thereof. The question involved is whether the loss must be borne by the mortgagors or the mortgagees.

The facts, while resting in parol, are not in dispute. The defendants having entered into an agreement to purchase a house and lot from James J. Boyle, a real estate agent, sought his assistance in procuring a mortgage to enable them to pay the balance of the purchase money. Boyle volunteered to secure the money for defendants from the plaintiffs. For the purpose of transferring the money and arranging for the necessary searches and papers, the defendants met at a trust company with Boyle, a representative of the trust company, and a lawyer. One of the plaintiffs stated that she took a check to the bank for the amount of the loan, and delivered it to Boyle, but the defendants did not see either of the plaintiffs. On that day, May 31, 1924, defendants executed and delivered a mortgage and bond for $2,800, payable in one year, with warrant of attorney to confess judgment. There was no direct communication at this time between the plaintiffs and defendants, and they did not have any contact with each other until after the defendants had paid to Boyle a sum sufficient to discharge the mortgage, principal and interest. All payments of interest were made promptly to Boyle, and on March 2, 1925, September 29, 1925, and September 28, 1926, payments aggregating $800 to apply on the principal were also made to him so that at the end of thirty months, the balance due on the mortgage was $2,000,

the payments so made to Boyle having been remitted to the plaintiffs. On March 29, 1927, the defendants paid to the real estate agent $200 and accrued interest, which the agent in turn remitted to the plaintiffs who refused to accept the payment of the principal assigning as a reason that they did not wish to accept repayment in small amounts. The money was returned to Boyle, and here the defalcations began. Instead of notifying the defendants that the plaintiffs had declined to receive further payments of the principal in instalments, Boyle misappropriated the money. Subsequently, the defendants paid Boyle not only the interest but other payments of principal so that in September, 1931, the entire principal had been paid to him with interest to July 1, 1931. Boyle, to conceal his misappropriations, thereafter remitted to the plaintiffs from time to time the full amount of interest due plaintiffs as if the balance were $2,000, retaining the payments on account of principal. Defendants and plaintiffs did not meet until September, 1931, when one of the plaintiffs called on the defendants and informed them that she desired to receive further payments of interest directly from the defendants, and then the fraud was disclosed.

A small commission was paid by plaintiffs for the collection of the interest as is indicated by the following questions and answers: "Q. Do you recall what charge he made? A. I don't just think what it was. I think it was only a quarter. I don't know. I know he did not charge much. Q. The interest on $2,000, the commission on that is ordinarily three per cent., and would be $60. He charged you something, didn't he? A. Yes, I think he did, but he did not charge anything for collecting the principal at all." Every six months Boyle notified the defendants of the amount of interest due, sending them statements on his own letterheads which were each in the following form:

"Mr. Felix Raniszewski, Et Ux., to James J. Boyle, Dr., for six months' interest on mortgage for ...... Dollars, secured on premises 323 Leverington Ave. Due ...... Dollars. Always bring this notice with you." When the payments were made by mortgagors, they were receipted on the notices in this form: "Received payment [date in figures] J. J. Boyle." It will be noted that the receipt was not signed by Boyle as agent for the plaintiffs, but in his own name. Boyle had never represented the plaintiffs in any other transactions, but on one occasion they had met at the office of Boyle and there received payment of a mortgage which they personally receipted for. The plaintiffs do not deny the authority of Boyle to collect the interest, but insist that he never had any authority from them to receive payments of principal, and that in undertaking to transmit any sums to apply on the principal, Boyle was acting as the agent and for the convenience of the mortgagors, the defendants. There is not any evidence to indicate that Boyle at any time had possession of either the bond or the mortgage, and the defendants admit that he never produced such papers or receipted on the bond or mortgage for payments.

This case is typical of a class which involves hardships on innocent parties occasioned by a willful breach of trust by those in whom confidence has been reposed. Either the mortgagors or the mortgagees must suffer a loss which they cannot well bear. The reports of our appellate courts contain numerous cases where the same methods have been employed as were used here to accomplish and conceal the evil designs of an embezzler, and the principles involved are well settled. As we have heretofore indicated, the facts are not in dispute. "When the scope of the agency rests in parol, and there is no dispute as to the facts, it is for the court to determine their legal effect": Williams v.

Cook, 289 Pa. 207, 214, 137 Atl. 232; also, see Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 285; Elliott v. Wanamaker, 155 Pa. 67, 25 Atl. 826.

Counsel for the appellants endeavor to meet the burden imposed upon them by referring to the general course of dealings in this one transaction. "As between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, though acting with limited powers: 2 C. J. 570'': Williams v. Cook, 289 Pa. 207, 212. Appellants then rely upon two facts which they maintain are sufficient to warrant an inference that Boyle was the agent of the mortgagees, to wit, (1) that the mortgagees admit the authority of Boyle to collect interest, and (2) that the mortgagees accepted three payments of principal through Boyle.

The first point upon which reliance is placed is of little avail, for it is well settled that authority to collect principal may not be inferred from authority to collect interest. "Creating one an agent to receive payment of the interest due on a mortgage does not make him an agent to receive payment of the principal. 'The fact that an agent is authorized to receive instalments of interest as they become due on a note or other obligation does not give him implied power to collect the principal': 2 Corpus Juris 621. In Mynick v. Bickings, 30 Pa. Superior Ct. 401, the court said, at page 406: 'The position of an investor would be most precarious if the fact that he employs an attorney from time to time when making loans and authorizes him to make collections of interest, and in

special cases of the principal due on securities, is sufficient to warrant a finding of authority generally to collect the principal of all his client's mortgages and that, too, when the latter keeps possession of his obligations' ": Browne v. Hoekstra, 279 Pa. 418, 421, 123 Atl. 861.

Neither do we regard the fact that three instalments of principal were remitted to the plaintiffs through Boyle sufficient to make him the agent of the mortgagees. In the case of Goll v. Ziegler, 61 Pa. Superior Ct. 616, two payments of principal were received, as here, through a third party, but this was not held to be sufficient to establish a course of conduct which would constitute the intermediary an agent of the mortgagee. In the case of Borland v. Wible, 94 Pa. Superior Ct. 41, just as in this case, a third party after receiving from a mortgagor and remitting to the mortgagee two payments of principal received a third payment of principal which he misappropriated, and it was contended that this was sufficient to form a basis for an inference that the collector was the agent of the mortgagee, but this court there said (p. 44): "These two checks among so many extending over a long period are a slim foundation upon which to base a course of conduct and thus confer upon Wegley [the intermediary] a right to collect the principal of the mortgage in question." The situation here is very similar to that in the case of Mynick v. Bickings, 30 Pa. Superior Ct. 401, where Judge HENDERSON said (p. 405): "The defendant had not been requested to make payments to Jones [the agent], nor had the plaintiff held out the latter as having authority to receive payments on the debt. Relying on his integrity and apparently to avoid the inconvenience of finding the plaintiff and paying her, he gave the money to Jones to be paid over. In so doing he assumed the risk that Jones might not act in good faith. If, at the time the

payments were made, the bond and mortgage had been in Jones' possession such possession would have been evidence of his control of the obligations. The debtor might have made himself secure by insisting on the production of the obligations and having the payments indorsed thereon. Generally speaking, it is the duty of a debtor, who is bound by an obligation in writing, to see that the person to whom he pays the money for his creditor has possession of the evidence of indebtedness, unless he can show express authority in the person to whom the payment is made to receive the money.''

We are all of the opinion that the evidence is not sufficient to warrant an inference that Boyle had authority to receipt for payments of principal on behalf of the plaintiffs. The agent, Boyle, did not even have possession of the evidences of indebtedness. If he had had the papers, this would have been a circumstance in connection with others which might lead to a conclusion of agency. But even such possession is not sufficient of itself to conclusively establish agency: Browne v. Hoekstra, supra. We will repeat the warning given by Mr. Justice SCHAFFER in the case last cited (p. 424) as peculiarly applicable to the present situation. ''We desire to admonish those who deal with agents claiming to be authorized to receive the principal of mortgages, that the mere possession of the mortgage papers is not sufficient to establish agency, and to call attention to the fact that a mortgagor before paying his indebtedness to an agent can fully protect himself by demanding the exhibition of a power of attorney authorizing the receipt of the principal or by inquiry from the mortgagee as to whether payment to the agent is authorized.''

The case of Williams v. Cook, 289 Pa. 207, is clearly distinguishable from the case we are now considering. While in that case payments of interest and principal

were made to the agent just as in this case, there were other facts from which a fair inference of agency could be drawn. The agent, Wegley, in that case was an attorney who represented the mortgagee in making the loan and likewise represented him in a number of different transactions. When the mortgagor and mortgagee in that case met, they each were represented by their own counsel. Part of the consideration for the sale of a property was paid in cash, and the balance secured by a mortgage. The cash payments were left with the attorney for investment and the agent, Wegley, was closely identified with the mortgagee rather than the mortgagor. When payments were made by the mortgagor to apply on the mortgage, they were left by the mortgagee with the agent for reinvestment. When these facts were taken in connection with the payment of interest and principal to the agent, it was sufficient to warrant the inference of agency. In the present case, the agent Boyle never represented the mortgagees in any other transaction, and it is very much more reasonable to infer that he was the representative of mortgagors rather than of mortgagees. The small compensation of twenty-five cents which was allowed for the remission of the interest was not much more than sufficient to pay for the postage and stationery, and was apparently an accommodation to the mortgagors. When receipt was given for the money paid to Boyle, he did not receipt for it as agent of the plaintiffs, but in his own name. The defendants must pay the penalty for failure to exercise the precautions which it was their duty to observe. "Where one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud": Froio v. Armstrong, 277 Pa. 18, 24, 120 Atl. 693.

A careful consideration of all the evidence has convinced all of us that the loss must fall on the appellants.

The assignments of error are dismissed, and the decree is affirmed.

PER CURIAM, June 5, 1933:

Petition for reargument is refused. We have again carefully considered the questions involved in this appeal with special reference to the matters called to our attention in the petition for reargument and are of the opinion that the case was decided correctly. We had considered the effect of certain statements in the petition and answer, although special reference was not made thereto in the opinion.

It is now contended, as it was in the original brief filed, that the averments in the petition and answer supplied admissions sustaining the appellants' position. In the petition to open the judgment, there was the following paragraph: "Defendants aver that they have paid to the plaintiffs, through their duly authorized agent, James J. Boyle, the full amount of the mortgage, together with interest on the same as it became due and payable, and also a satisfaction fee." This is followed by a schedule of the various payments made to Boyle. In answer to this paragraph, the plaintiffs said in part as follows: "It is admitted that $500 was paid March 2, 1925, $100 September 29, 1925, $200 September 28, 1926, by the defendants to James J. Boyle and by Boyle to deponents. It is denied that James J. Boyle was authorized to act as agent for deponents in the collection of any other sums on account of the principal of the said mortgage, or to receive any further sums of principal from the defendants." It is suggested that the fair inference from the answer of the plaintiffs taken with the petition is that the plaintiffs admitted the fact that Boyle was the agent of the mortgagees in the receipt of payment of the first three sums paid on account of principal and

that this taken with other facts was sufficient to show a course of conduct establishing the relation of principal and agent between the mortgagees and Boyle and raised an issue of fact which should have been submitted to a jury. A reference to the averment in the petition will show that it is ambiguous. It is impossible to say from reading the paragraph whether the mortgagors intended to say that Boyle was the agent of plaintiffs or defendants. They state that "they have paid to the plaintiffs, through their duly authorized agent, James J. Boyle, the full amount of the mortgage." The possessive pronoun "their" might just as well, or more reasonably, be applied to defendants as to plaintiffs, since there is nothing in the context or position to indicate definitely to which of the parties the word "their" refers. It is only by inference that it might be concluded that the answer intends to admit authority upon the part of Boyle to receive payments of principal on behalf of the plaintiffs. The evidence was directly to the contrary. The question whether Boyle was the agent of the mortgagors or mortgagees in the transmission of the payments to apply on principal was a matter to be determined rather from the facts shown with relation to the actual conduct of those involved than from a mere inference.

In the opinion filed, we said: "The facts, while resting in parol, are not in dispute." This statement was not precisely correct. The facts presented on the hearing on the rule to open the judgment were not disputed. The defendants called as witnesses the mortgagees as on cross-examination and did not contradict their testimony, nor was the evidence on the part of the mortgagees contradicted. Conceding that the court could properly take into consideration the averments in the pleadings as construed by appellants and that this raised an issue of fact, it does not follow that

the court was bound to submit that issue to a jury. "Where an application is made to open a judgment the relief demanded is in equity, and the applicant or complainant must make out a case which would justify a chancellor in entering the decree": Kline v. Fitzgerald Brothers, 267 Pa. 468, 471, 110 A. 348. Consequently, we arrive at the same point, for in the end it is a matter to be determined in the first instance by the court in the exercise of its equitable powers. We are of the opinion that the lower court did not abuse its discretion in refusing to open the judgment.