Zimmer et ux. to Use, Appellant, *v.* Zsigmond.

Argued April 11, 1933.

Before Trexler, P. J., Keller,

CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank B. Quinn,* and with him *Charles H. English* and *Raymond P. Leemhuis,* for appellant.

*T. P. Dunn,* for appellee.

OPINION BY PARKER, J., July 14, 1933:

This appeal by plaintiffs is from an order of the lower court opening a judgment entered upon a bond accompanying a mortgage. On May 25, 1925, the defendant, Julia Zsigmond, executed and delivered a bond and mortgage to Edward Zimmer and Mary L. Zimmer for the sum of $1,900, payable seven years after date with interest at six per cent "payable semiannually at the law offices of Charles A. Mertens, Erie, Pennsylvania. With the privilege of paying three hundred (300) dollars or more to apply on the principal with any payment of interest on giving thirty days' prior notice." On the same date the mortgage, with the knowledge of the defendant, was assigned to Frances Hammer. Five payments, aggregating $1,300, to apply on the principal, were paid with semiannual payments of interest to Charles A. Mertens, a lawyer. He embezzled the $1,300 so paid him on account of principal, but to conceal his crime paid the plaintiff the semi-annual interest on the full amount

of the loan as it fell due. Mertens died in April, 1932, when the embezzlement was discovered. Prior to that time the defendant assumed that the payments of principal were being transmitted to the plaintiff, but the plaintiff had no knowledge of such payments. Mertens never had possession of the securities, but these remained in the possession of the mortgagee. The same lawyer placed eight other mortgages for Mrs. Hammer at different times between 1914 and 1928, in all of which there was the same provision with relation to the payment of interest at his law offices.

Mrs. Hammer testified that she never had any talk with Mertens with reference to collecting the interest and principal for her, but that for a time he charged her two dollars for remitting the interest to her. She also testified that he never collected any payments of principal for her on other mortgages; that those obligations had not been paid in installments, but that when the mortgages were paid she went to the office of the recorder, satisfied the mortgages, and received her money. She admitted that Mertens had authority to collect the interest and that he was her personal attorney and handled all her affairs. He had been her attorney for twenty-five years, and she had great confidence in him and took his advice generally on business matters. She did not speak English well, and that was one reason she went to him. After the death of Mertens in April, 1932, the mortgagor and mortgagee met, Mrs. Zsigmond with her daughter, Mary Seidel, having gone to see Mrs. Hammer for the purpose of paying an installment of interest then due. Mrs. Seidel testified as follows: "Q. Did she [Mrs. Hammer] say anything at that meeting as to Mr. Mertens not having authority to collect the principal? A. No, the way she talked he had every right to collect it. Q. Did she say specifically that she had authorized Mr. Mertens to collect that principal? A. She did. Q.

What words did she use? A. Probably I am saying something that is not necessary but she stated that she had been here several years from the old country and could not talk English very well and she went to somebody who could talk to her in her own language and that she had Mr. Mertens handle her affairs and that she had every trust in him. Q. Was anything said as to whether or not he had a right to collect the mortgage—the principal of it? A. She did not exactly say that; she said he was handling her affairs." Mrs. Zsigmond admitted that she never made any effort to find out whether Mertens had authority to receive payments of principal; that she knew the mortgage had been transferred to Mrs. Hammer; and that the only reason she paid the principal to Mertens was because Mertens told her to do so, she taking for granted that he had a right to receive it.

The sole question involved in this appeal is whether Mertens was the agent of the mortgagee authorized to receive payments of principal. The burden of proving agency is on the one who asserts it: Dobbs v. Zink et ux., 290 Pa. 243, 138 A. 758; Pore v. Duke, 303 Pa. 528, 531, 154 A. 797. "As between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, though acting with limited powers": Williams v. Cook, 289 Pa. 207, 212, 137 A. 232.

The mere fact that the bond and mortgage designated a place at which payments were to be made did not give the defendant the right to make payments of principal to Mertens as agent of Mrs. Hammer. It

will be noted that the provision with relation to payments did not provide that payments should be made to Mertens, but simply fixed a place at which the payments were to be made. The bond and mortgage called for the payments to be made to the mortgagee. "Neither does the mere designation of the place at which payments shall be made of itself alter the obligation of the maker as to the person to whom, or through whom, payments shall be made. He is still bound to see for himself that payment is made to the legal holder, whether he be the original payee or an indorsee, or to his authorized agent. He cannot safely pay to any person at the designated place, who, in the absence of the securities, properly indorsed, cannot show authority to receive payment for the party entitled to the money": 21 R. C. L. 24. Also, see note to the case of Hoffmaster v. Black, 21 L. R. A. (N. S.) 52, and Cheney v. Libby, 134 U. S. 68, 82.

It is well settled in this Commonwealth that the mere relationship of attorney and client does not invest the attorney with general agency to make collections of the principal of his client's mortgages. This was one of the primary questions involved in the case of Pore v. Duke, supra. In that case, a firm of attorneys was employed by a mortgagee to look after the details of all her loans, such as searching records, preparing papers, and making collections for her, but she kept possession of her own money and her own securities. The court there said (p. 532): "Their agency was the same as that of thousands of attorneys throughout the Commonwealth who look after the loaning of money and making collections for clients. We cannot adopt the rule that each attorney is a general agent of all clients for whom he so acts, or that one client can be deprived of his property by the manner in which the attorney transacts the business of other clients." "The position of an investor would

be most precarious if the fact that he employs an attorney from time to time when making loans and authorizes him to make collections of interest, and in special cases of the principal due on securities, is sufficient to warrant a finding of authority generally to collect the principal of all his client's mortgages and that, too, when the latter keeps possession of his obligations": Mynick v. Bickings, 30 Pa. Superior Ct. 401, 406. Also, see Williams v. Cook, supra.

Neither does the creating of one an agent to receive payment of interest due on a mortgage make that person an agent to receive payment of principal: Plunkett v. Raniszewski, 108 Pa. Superior Ct. 506, 165 A. 529. Additional force is given to our conclusions by the provision in this bond and mortgage that it should not be payable for seven years, but that payments could be made to apply on the principal at interest periods, provided thirty days' prior notice of the desire to make such payments was given. It is apparent that such notice was to be given to the mortgagee, and there is neither an allegation in the petition nor any evidence that such notice was ever given. Appellee and the lower court in its opinion concede the force of the conclusions which we have so far stated, but both suggest that the admissions of Mrs. Hammer were sufficient to establish the fact that Mertens was her agent for the collection of principal. It is true that Mrs. Seidel, the daughter of the mortgagor, testified in answer to a leading question of counsel for defendant that Mrs. Hammer said that Mr. Mertens had authority to collect the principal, but when she was asked by her own counsel for the exact words used, she showed that her statement was a mere inference from the fact that Mrs. Hammer had said that Mertens was handling her affairs and she had every trust in him. On cross-examination, she answered as follows: "Q. Was anything said as to whether or not she had a right to collect the mortgage—the principal of it?

A. She did not exactly say that; she said he was handling her affairs." The actual statements attributed to Mrs. Hammer by defendant's daughter came far short of an admission that Mertens was authorized to receive payments of principal.

Taking into account all the attendant circumstances, we fail to find sufficient evidence to warrant a conclusion that Mrs. Hammer held out Mertens as her agent authorized to receive payments of principal. We are all of the opinion that the defendant has not made out a case which would justify a chancellor in entering a decree on her behalf, and consequently the issue should not have been awarded: Kline v. Fitzgerald Brothers, 267 Pa. 468, 471, 110 A. 348. This is clearly a case in which the mortgagor must stand the loss, hard as it is, and we again call attention to the admonition of Mr. Justice SCHAFFER in the case of Browne v. Hoekstra, 279 Pa. 418, 424, 123 A. 861: "We desire to admonish those who deal with agents claiming to be authorized to receive the principal of mortgages ...... that a mortgagor before paying his indebtedness to an agent can fully protect himself by demanding the exhibition of a power of attorney authorizing the receipt of the principal or by inquiry from the mortgagee as to whether payment to the agent is authorized." Our conclusions are in accord with a long line of cases decided by the Supreme Court and this court. See Browne v. Hoekstra, supra; Williams v. Cook, supra; Pore v. Duke, supra; Goll v. Ziegler, 61 Pa. Superior Ct. 616; Mynick v. Bickings, supra; Peters v. Alter, 89 Pa. Superior Ct. 34; Borland v. Wible, 94 Pa. Superior Ct. 41.

The defendant is entitled to our sympathy, yet she finds herself in the position in which she is by reason of a failure to exercise common prudence. Were we to hold other than we have, it would seriously impair the security of all mortgages.

The order of the court below is reversed.