Corn Exchange National Bank and Trust Company et al. *v.* Jones et al., Appellants.

Argued October 6, 1933.

Before KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ. Affirmed.

*Thomas P. Mikell,* of *Saul, Ewing, Remick & Saul,*
for appellant.

*Lloyd J. Schumacker,* and with him *William W.
Cohan,* of *Cohan & Schumacker,* for appellee.

OPINION BY BALDRIGE, J., February 1, 1934:

This sci. fa. sur mortgage was tried before Judge
LEWIS, without a jury, who found for the plaintiffs.
This appeal followed.

The essential facts may be summarized as follows:

Jonathan Powell died in 1882, appointing, in his will, three executors and trustees. In the third paragraph, he gave, devised and bequeathed all his residuary estate to his executors, "their heirs and assigns in trust," etc. The twelfth paragraph provided as follows: "It is my will and desire that the number of my executors and trustees under this my will, shall not be less than three, and if from death, resignation or any other cause they shall be reduced below that number, then and in such case, and as often as the same shall happen, I order and direct that the survivors or survivor of them, shall with the consent of a majority of my then living children, nominate and appoint some suitable person or persons to fill such vacancy or vacancies, and thereupon such person or persons, after being duly qualified, shall have the same powers, rights, privileges and duties as my executors and trustees hereinafter appointed."

In 1904 a mortgage was executed by Henry Jones to Jere L. Cresse, who assigned it to the Land Title and Trust Company, and the trust company, in turn, assigned it to Joseph L. Atkinson, Joseph H. Chubb, and William Powell, executors and trustees under the last will of Jonathan Powell, deceased. Both Joseph Chubb and William Powell died in 1914. In 1917 Joseph L. Atkinson, the last survivor of these trustees, died, and his son, J. Powell Atkinson, and the widow qualified as executors of his will. The former was the active executor of his father's estate as his mother, his co-executor, was in poor health. Notwithstanding the directions in the will, no appointment was made upon the death of either Joseph Chubb or William Powell, nor upon the death of the survivor, Joseph Atkinson, until May 12, 1930, when the Central Trust and Savings Company and Joseph P. Parker were appointed substitute trustees by the orphans' court; on

December 11, 1930, W. Logan MacCoy was appointed an additional substitute trustee; and on November 16, 1931, the Corn Exchange National Bank and Trust Company was appointed a substitute trustee in place of the Central Trust and Savings Company.

On July 24, 1923, the Real Estate Title Insurance and Trust Company, representing the mortgagor, with the intention of paying the mortgage debt and interest, delivered to J. Powell Atkinson a check made payable to the order of "J. L. Atkinson & Son," the trade name under which J. Powell Atkinson, individually, after the death of his father, maintained a real estate brokerage business. Atkinson deposited the check in his individual bank account. He embezzled the money, but continued, until some time in May, 1930, to pay, periodically, to the beneficiaries of Jonathan Powell's estate, sums of money purporting to be income from the funds invested in this mortgage.

The question before us is, Did this payment to J. Powell Atkinson discharge the mortgage debt? Under the common law, "upon the death of a sole or surviving trustee ...... the legal title of the real property held in trust vests, subject to the trust, in the heirs of the trustee, and the title of the personalty, in his personal representatives, to the exclusion of other persons": 39 Cyc. 314. The obvious reason for this rule is that there must be some one in whom title is vested, for its preservation, until the appointment of a new trustee. See Crunkelton et al. v. Evert et al., 3 Yeates 570; Jenks v. Backhouse, 1 Binney 91; Hunt v. Crawford, 3 P. & W. 426; Miller v. Leidig, 3 W. & S. 456; Cone v. Cone (S. C.), 39 S. E. 748; and Baltimore Trust Co. v. George's Creek C. & I. Co., (Md.), 85 A. 949. None of the cases hold, however, that the personal representatives possess the rights and powers of the original trustees, with full power to collect interest, satisfy mortgages, or

perform other duties incident to a continuation of an active trust.

The appellant contends, however, that the common law rule not only temporarily vests the title in, but also gives the right and power to the personal representatives of a deceased trustee to administer the trust; and that the statutes of Pennsylvania have not altered it. Our attention is directed to the Fiduciaries Act of June 7, 1917, P. L. 447, §3 (b) (20 PS §350), which expressly provides that, in the event of the death of an executor, the executor of such deceased executor shall, in no case be deemed executor of the first testator; and to section 56 (b) (20 PS §972), which provides for the appointment of substitute trustees, in case of death, resignation, etc. The appellant also lays stress on the omission in the latter section of any prohibition of an administrator or executor of such trustee discharging the duties of the trust; and to the words ''it shall be lawful for the orphans' court ...... on the application of any party interested ...... to appoint a trustee or trustees ......'' The interpretation placed on this statute by the appellant is that there is no absolute obligation on the court to appoint a substitute trustee in case of death, and that until a successor is appointed, the duties of the deceased trustee fall on his personal representative.

When this will was made, in 1882, the Act approved May 3, 1855, P. L. 415, §2 (repealed by Section 63 of the Fiduciaries Act of 1917) (20 PS §2792), was in force; and it provided that whenever any trustees are named, and one or more of them shall die, renounce, etc., the survivors or survivor shall have and exercise all the title and authority which the whole might have done, unless the trust or power conferred shall require the whole number to act, in which case the vacancies shall be filled in manner provided by law.

In Delbert's Appeal No. 1, 83 Pa. 462, 468, by the

terms of the will, the property of the testator was directed to remain in the name, and under the management, of the executors and the survivors of them, to receive rents and to continue to perform active duties in connection with receiving interest, etc. It was held that where an active trust is created, and the intent appears to be that it shall continue for life or other limited period, a trustee is necessary to carry out the purposes contemplated by the testator. "It will be the duty of the orphans' court to make such an appointment."

We think, undoubtedly, the legislative policy in this Commonwealth is that where there are active duties to perform and there is a vacancy in the trusteeship, the courts are required, upon application and proper proof, to fill the vacancy. That the court is required to appoint a trustee or trustees is especially true if the clear intent appears in the will, as here, that a vacancy shall be filled. If another method of filling the vacancy is directed by the testator, it should be followed; if not, the court should act.

In Shaw v. M'Cameron, 11 S. & R. 252, 255, Mr. Justice GIBSON said: "It is perfectly clear, that the trust, which was a personal confidence in the executors, did not vest in the administrator of the survivor of them, for the same reason that the administrator of an executor is not the executor of his intestate's testator." In Wilson v. Pennock, 27 Pa. 238, 239, it is said: "It may be conceded that discretionary powers will not devolve upon the heir or personal representatives of the original trustee, Hill on Trustees 488, 16 Ves. 44; that on the death of one of several trustees, they will not devolve on the survivor: 16 Ves. 45, 1 B. & Ald. 608."

When we turn to the will, we find that the testator expressed, in direct and specific language, his intention that there should always be three trustees. It

is quite apparent that he never contemplated that but one trustee, and certainly not an executor of a surviving trustee, should be vested with the power of administering the trust. Our courts have held that when a testator expressly directs in his will that the trust estate shall be administered by a certain number of trustees, that provision shall be just as rigidly enforced as any other portion of the will. "When the administration of a trust is vested in co-trustees, they all form but one collective trustee. They must, therefore, execute the duties of the office in their joint capacity. Thus, a receipt of money for a certificate of bankruptcy, etc., must receive the joint signatures of the whole body; for the power, interest and authority of co-trustees in the subject matter of the trust being equal and undivided, they can not like executors act separately, but all must join. Lewin on Trusts 265, (24 Law. Lib.); Willis on Trusts 136, (10 Law. Lib.); Ex parte Rigby, (19 Vez. 463). And this principle enters into all cases, depending on the discretion and judgment of the trustees in contradistinction to acts of a mere ministerial nature. The former requires the concurrence of all the trustees; the latter may be performed by one": Vandever's Appeal, 8 W. & S. 405, 409. See, also, Lafferty's Est., 184 Pa. 502, 510, 39 A. 1116. It was said in Fesmire et al. v. Shannon et al., 143 Pa. 201, 210, 22 A. 898: "Had the defendant given a mortgage to trustees for a part of the trust fund, a payment to one of them without knowledge or consent of the others would not have been a good payment, and a release by one of them would not have discharged the debt." Perry on Trusts, Vol. 1, p. 685, §412, states that "a receipt for money, in the absence of special directions in the instrument of trust, must be signed by all the trustees, or it will be invalid." This writer, however, says the rule is relaxed, and it has been held that payment of a mort-

gage to one of two trustees is a valid payment. The only case cited in support of the rule is Bowes v. Seeger, 8 W. & S. 222. But, in that case, the mortgage did not disclose, as here, and the mortgagor did not have notice, that the assignees and holders of the mortgage were trustees. Furthermore, the payment there was made to a trustee. See, also, Tarrant v. Backus et al., (Conn.) 28 A. 46.

In Ashton's Est., 5 Wharton 228, the deceased was entitled to certain ground rents devised to his executors in trust for certain persons and purposes specified in the will, which provided that if the ground rents should be extinguished by purchase, then the purchase money should be paid to his trustees and the survivor or survivors and the executors and administrator of each survivor. The court held that the administrator of the survivor who made use of the money was chargeable with interest; that was in accordance with the express powers given to the administrator of the survivor in the will.

The appellant, in support of its position that the testator authorized the personal representatives of a deceased trustee to continue the trust, calls attention to the clause in the will wherein he devised and bequeathed his residuary estate to his executors, "their heirs and assigns in trust." The purpose of the testator, no doubt, was to vest in his trustees the power to convey real estate in fee. This language certainly can not be interpreted as meaning that the executors of the surviving trustees, or others not named in his will, who have been appointed neither as directed in the will nor by the court, shall have the authority to perform duties bestowed upon his trustees who were appointed, no doubt, because the testator had confidence in their integrity and discretion. This case discloses a good example of how assets of an estate may be lost and the purpose of a testator defeated by adopting the rule invoked by the appellant.

We find no facts which raise an estoppel in favor of the defendants. There was no testimony that J. Powell Atkinson was expressly authorized to collect the principal of mortgages, or that the beneficiaries knew of his so doing. Nor was there sufficient proof of any words or conduct upon the part of the beneficiaries justifying the implication that he had such authority, or tending to induce the owner of the mortgaged property, or its agent, to rely upon his authority to that extent. The collection of interest did not confer upon him that right: Borland v. Wible, 94 Pa. Superior Ct. 41; Plunkett et al. v. Raniszewski et ux., 108 Pa. Superior Ct. 506, 165 A. 529. In Zimmer et al. v. Zsigmond, 109 Pa. Superior Ct. 322, 167 A. 405, Judge PARKER exhaustively discussed the policy of protecting a mortgagee against loss of unauthorized payments to an agent. The equities do not favor the mortgagor who was so careless as to pay money to one without authority to receive it. When one deals with a trustee, or agent, it is his duty to look at the nature and extent of his authority: Kenworthy v. Equitable Trust Co., 218 Pa. 286, 67 A. 469; Culbertson v. Cook et al., 308 Pa. 557, 162 A. 803. If an investigation or inquiry had been made by the mortgagor, or his agent, it could have been readily ascertained that Atkinson was without authority to receive this money, and that the record disclosed that the mortgage was held in the name of trustees. Instead of so doing, as we have seen, a check was made payable, not even to J. Powell Atkinson as executor of J. L. Atkinson, but to "J. L. Atkinson & Son." The appellant can not escape the penalty of this negligence. Nor did the delay of the beneficiaries in having substitute trustees appointed create an estoppel. Their tardiness did not justify a payment of the principal to one not authorized to receive it, or otherwise affect their right to question Atkinson's authority.

We have given careful consideration to the able argument of counsel, but find no merit in any of the assignments of error.

Judgment of the lower court is affirmed.