## Kienberger *v.* Lally, Appellant.

584

Argued March 8, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Roy B. Pope,* with him *E. F. McGovern,* for appellant.

*G. John Bruger,* for appellee.

OPINION BY BALDRIGE, J., April 13, 1938:
The lower court refused to open a judgment entered

upon a bond accompanying a mortgage. The well-recognized rule is that an application to open a judgment entered upon a warrant of attorney is an equitable proceeding, addressed to the sound discretion of the court and to be disposed of in accordance with equitable principles. See *Mielcuszny et ux. v. Rosol et ux.*, 317 Pa. 91, 176 A. 236. This record does not disclose anything that convicts the learned court below of abusing its authority.

The question for determination in this unfortunate case, where too much confidence was placed in a member of the bar who was faithless to his trust, is whether R. J. O'Donnell, the attorney to whom the indebtedness was paid, represented the mortgagor or mortgagee. Lally, the mortgagor, having asserted that O'Donnell was the agent of Kienberger, the mortgagee, the burden was on him of proving O'Donnell's authority to receive the money: *Pore v. Duke et ux.*, 303 Pa. 528, 531, 154 A. 797; *Zimmer v. Zsigmond*, 109 Pa. Superior Ct. 322, 325, 167 A. 405. O'Donnell had acted as attorney for Kienberger from about 1921 or 1922 in loaning money on mortgages and judgments in twelve instances, and twice he was given power of attorney by him to satisfy mortgages. There was testimony that he also represented Kienberger in other minor legal matters.

Lally testified that O'Donnell had settled his mother's estate and that he informed him if he needed any money to come and see him. In 1927 he went to O'Donnell's office and told him he desired to borrow $950. O'Donnell thereupon communicated with Kienberger, who sent him a check for that amount, which he delivered to Lally, who paid O'Donnell's fees and the costs. Lally executed the bond and mortgage, payable to Kienberger, which, with the insurance policy covering the premises, were delivered to the mortgagee immediately after the

mortgage was recorded, and he retained possession thereof. The interest on the mortgage was paid to O'Donnell, as well as two installments of the principal, on June 16, 1930, and June 18, 1931, respectively. Lally admitted that in making these payments he did not request the production of the bond and mortgage, nor did he inquire as to O'Donnell's authority to receive the payments of principal, and, when asked why he did not make such inquiry, replied: "He (O'Donnell) was my attorney."

To conceal his crime, O'Donnell paid the mortgagee the interest on the entire principal debt to September 1, 1932, when, at the instance of Kienberger, he prepared a written statement, as of that date, of moneys he had loaned to various parties for Kienberger. It showed that the Lally mortgage had been paid, although O'Donnell had not remitted any portion of the principal to Kienberger. The sixth item of this statement is as follows: "Chas. Lally Principal paid and interest to Sept. 14/32, $71.00." When his attention was called to the fact that the statement was made on September 1st and that it showed interest paid to September 14th, or two weeks thereafter, he stated: "That is the day it was paid to me." That was not true. A receipt offered in evidence shows that, in fact, Lally paid to O'Donnell, on June 18, 1931, $360.50, which was in full of the debt and interest. It appears in this statement that Edward Devanney had paid, on account of the principal of his mortgage, the sum of $300 to O'Donnell, who testified that he had paid Kienberger $100 of that amount. It also set forth that Eugene Cavanaugh, a mortgagor, had paid $400, of which, O'Donnell testified, $200 was paid to Kienberger. His statement does not show that he took credit for these amounts and Kienberger testified that O'Donnell made no payment to him on account of the principal of either of these two mortgages.

O'Donnell further testified that when he submitted the statement of September 1, 1932, to Kienberger, which showed that Lally had paid O'Donnell the principal of the mortgage, he said he would look to O'Donnell for the money paid by Lally, and that subsequently Kienberger not only insisted that he pay him the amount collected from Lally, but he continued to consult him as a lawyer until O'Donnell went into bankruptcy and was disbarred in 1934. The chancellor was fully justified in concluding that the contradictory evidence of O'Donnell, an admitted embezzler, did not "carry conviction as to truth."

To open a judgment there must be more than a mere conflict of evidence; it is not a case of oath against oath, but there should be such credible evidence that a chancellor in forming his deliberate judgment is impressed with the fact that the ends of justice would be met by opening the judgment and submitting the matter to a jury: *Mielcuszny et ux. v. Rosol et ux.,* supra (p. 94). This evidence did not meet that test.

The testimony shows that Kienberger, in making loans, trusted O'Donnell's judgment whether the value of the property was sufficient to give him security, and that papers in connection therewith were correctly drawn; but there was no credible evidence of either an implied or express agency for O'Donnell to collect payments of principal, or of acquiescence or ratification by Kienberger of his action. It has been frequently ruled that authority for collecting and remitting interest, periodically, does not empower one to collect the principal, nor authorize the debtor to pay him as agent. See *Mielcuszny et ux. v. Rosol et ux.,* supra (p. 95). The appellate courts have taken occasion in several decisions to warn those who deal with agents claiming to be authorized to receive the principal of indebtedness, to take the precaution of demanding evidence of that

right, either by letter of attorney authorizing receipt of principal, or by inquiry from the creditor whether the payment is authorized: *Browne et al. v. Hoekstra*, 279 Pa. 418, 123 A. 861; *Zimmer et ux. v. Zsigmond*, supra. If this admonition had been followed, the mortgagor would not find himself in the present difficulty.

In *Messmer et ux. v. McLaughlin*, 122 Pa. Superior Ct. 531, 186 A. 286, the learned trial judge opened the judgment. There was testimony that O'Donnell, the same attorney involved in this case, paid to the mortgagee sums he received on account of principal, and there were more facts adduced to disclose a general agency. We stated that the case was a close one, but that we did not feel warranted in holding that the court below was guilty of such abuse of discretion as to warrant us in reversing this action. If the rule had been discharged, there can be no doubt that his action would have been affirmed by this court. It was held in *Mielcuszny et ux. v. Rosol et ux.*, supra, that an implied agency may arise from receipt of payments of principal, which had been approved by the mortgagee, citing *Williams v. Cook*, 289 Pa. 207, 137 A. 232; *Patterson v. Van Loon*, 186 Pa. 367, 40 A. 495. But, as pointed out in *Brientnall v. Peters*, 317 Pa. 356, 357, 176 A. 240, where the mortgagee testified that "in some cases" the agent had collected, and she had accepted, payments of principal on mortgage loans which he had made to other mortgagors on her behalf, the proof of an alleged course of conduct was insufficient to bring the case within the doctrine of *Patterson v. Van Loon*, supra; *Williams v. Cook*, supra, or *Dobbs v. Zink*, 290 Pa. 243, 138 A. 758. "The rationale of the doctrine is that approval by the principal of a series of acts by the agent may give rise to a reasonable inference of authority to perform other acts of the same kind."

In *Zimmer et ux. v. Zsigmond*, supra, interest was to

be paid semi-annually at the law offices of Charles A. Mertens, "with the privilege of paying three hundred dollars ($300) or more to apply on the principal with any payment of interest on giving thirty days' prior notice." Mertens embezzled five installments of principal paid at the time the semi-annual payments were made. We held that the designation of the place of payment of interest did not give the defendant the right to pay principal to Mertens as agent of the mortgagee. In that case, the lawyer had placed eight other mortgages for the mortgagee, with the same provision relative to payment of interest. We reversed the lower court for opening the judgment, on the ground that the mortgagor failed to prove the agency of Mertens.

In *Plunkett et al. v. Raniszewski et ux.*, 108 Pa. Superior Ct. 506, 511, 165 A. 529, we cited, with approval, the rule laid down in 2 C. J. 621, as follows: "Creating one an agent to receive payment of the interest due on a mortgage does not make him an agent to receive payment of the principal." There, as here, there was no direct communication between the plaintiffs and defendants until after the defendant had paid to Boyle, the defaulter, a sum sufficient to discharge the principal and interest. We there said (p. 510): "This case is typical of a class which involves hardships on innocent parties occasioned by a willful breach of trust by those in whom confidence has been reposed. Either the mortgagors or the mortgagees must suffer a loss which they cannot well bear." We held in that case that the appellants failed to meet the burden imposed upon them of showing the agent's authority to receive payments of principal, by proving his right to collect interest, although there was proof that three installments of principal were remitted to the plaintiffs through Boyle. See, also, *Goll v. Ziegler*, 61 Pa. Superior Ct. 616, where two payments of principal re-

ceived through the agent were held insufficient to establish a course of conduct which would constitute the intermediary an agent of the mortgagee. "Where one of two innocent persons must suffer loss by reason of the fraud of another, the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud: *Froio v. Armstrong,* 277 Pa. 18 [120 A. 693]; *Bair's Assigned Est.,* 20 Pa. Superior Ct. 85": *Mielcuszny et ux. v. Rosol et ux.,* supra (p. 96).

It is true that Kienberger did not attempt to collect the principal from Lally until July, 1934, when his attorney wrote Lally demanding payment. This letter, and one written the following month, addressed to Lally at a place of residence from which it was later learned he had removed, were returned by the postal authorities unclaimed, and it was not until 1936 that plaintiff entered judgment. Controlling importance cannot be given to the delay in entering the bond and attempting to enforce collection of the debt: *Pore v. Duke et ux.,* supra (p. 533). There is not sufficient evidence that Kienberger did anything that misled Lally to his prejudice.

A careful consideration of this case leads us to the conclusion that the evidence failed to meet the burden of establishing the authority of O'Donnell, as agent of Kienberger, to receive payments on account of the Lally mortgage.

Decree of the learned court below is affirmed, at appellant's costs.

KELLER, P. J., and CUNNINGHAM, J., dissent.